[No. 15623-7-II.   Division Two.   April 21, 1993.]

DALE WASHAM, ET AL, *Appellants,* v. PIERCE COUNTY
DEMOCRATIC CENTRAL COMMITTEE,
ET AL, *Respondents.*

454

*Dale Washam* and *Thomas Grajkowski,* pro se.

*Nels B. Nelson; Larry J. Couture* and *The Dolack Hansler Firm, P.S. Inc.,* for respondents.

ALEXANDER, C.J. — Thomas Grajkowski and Dale Washam together appeal an order of the Pierce County Superior Court denying their petition for (1) a declaration that the election held on December 15, 1990, for chairperson and other officers of the 25th Legislative District Democratic caucus was void; and (2) a writ of mandamus compelling the chairperson of the Pierce County Democratic Central Committee to call a separate meeting of all Democratic precinct committee officers of the 25th Legislative District for the purpose of electing a legislative district chair and other officers. We affirm.

At the November 1990 general election, Dale Washam and Thomas Grajkowski were both elected Democratic precinct committee officers in precincts located within the 25th Legislative District. In 1990 the 25th Legislative District was entirely within Pierce County. Former RCW 44.07B.250.

On December 3, 1990, the Pierce County Democratic Central Committee gave notice of its 1990-92 Democratic Central Committee reorganization meeting by sending an "official call" to all Democratic precinct committee officers in Pierce County, indicating that the meeting would be held at McIntyre Hall at the University of Puget Sound at 10 a.m. on Saturday, December 15, 1990. The notice stated that (1) all Democratic precinct officers elected on November 6, 1990, would be eligible to vote at the meeting, and (2) district elections were to be part of the agenda. The December 1990 newsletter of the 25th Legislative District Democratic Club, which was sent to all precinct committee officers in the 25th Legislative District, also announced the central committee meeting and encouraged precinct committee officers to attend. It stated that:

> The first official duty for newly elected Precinct Committee Officers (PCOs) will be to participate in the reorganization of the Pierce County Democratic Central Committee at [its] December 15th reorganization meeting. . . .
>
> The 25th. District PCOs will caucus following the County meeting to elect Legislative District leadership . . ..

Washam and Grajkowski both attended the central committee reorganization meeting. At that meeting, John Thompson was elected chairperson of the Pierce County Democratic Central Committee. At a point in the proceedings, a meeting of the 25th Legislative District precinct committee officers was convened for the purpose of electing a legislative district chair and other district officers. Washam and Grajkowski were present at this meeting as well. Grajkowski was nominated for the position of district chair. He lost the election, however, to Oscar Larsen by a vote of 29 to 9. Washam and Grajkowski were both nominated for positions on the 25th Legislative District's executive board, but each lost by a vote of 26 to 10. Washam was also nominated for state committeeman, but he lost again, garnering only 10 votes.

Shortly afterward, Washam and Grajkowski brought suit in Pierce County Superior Court against the Pierce County Democratic Central Committee; its chair, Thompson; and the 25th Legislative District chairperson, Larsen. They asked the Superior Court to (1) declare that the December 15, 1990, 25th Legislative District elections were invalid, and (2) issue a writ of mandamus compelling Thompson to immediately call a reorganizational meeting of all elected precinct committee officers in the 25th Legislative District, for the purpose of electing a legislative district chair and other officers. A superior court judge issued an order directing the Pierce County Central Committee to show cause why it had not (1) called a "separate" reorganizational meeting of the 25th Legislative District to elect new officers, and (2) complied with the provisions of RCW 29.42.070. The judge also ordered the chair of the central committee not to allow any representative of the 25th Legislative District "to participate in any meeting of any kind until duly elected at a reor-

ganizational meeting that is in full compliance with RCW 29.42.070 . . . ."

A show cause hearing was held January 17, 1991, before another judge of the Superior Court.

The judge presiding at that hearing limited the submissions to affidavits. After the hearing, but before a written order on show cause was issued, Washam and Grajkowski moved to have Thompson held in contempt for allegedly violating the previous order of the court. They claimed that he violated the order by allowing representatives of the 25th Legislative District to "participate" in a central committee executive board meeting on January 10, 1991.

Following a show cause hearing on the contempt issue, Washam and Grajkowski's motion was denied. The trial court also dismissed their petition for a writ of mandamus, concluding that the statutory requirements regarding notice and separate meeting had been met. Washam and Grajkowski's subsequent motion for reconsideration was denied.

Washam and Grajkowski contend on appeal, as they did at trial, that the Pierce County Democratic Central Committee and its chair, Thompson, violated RCW 29.42.070 by (1) holding the 25th Legislative District election at the end of the county reorganizational meeting, rather than at a "separate" meeting, and (2) giving inadequate notice of the election. They also claim that the trial judge (1) had impermissible ex parte contacts with Thompson's attorney, and (2) should have disqualified himself because of his previous connection with the Pierce County Democratic Party and Thompson. Finally, they contend that the trial court violated their due process rights by refusing to allow them to present live testimony during the evidentiary hearing. Accordingly, they claim that the trial court erred in dismissing their petition.

## MOOTNESS

■ The first issue that we address is mootness. As a general rule, appellate courts will not decide moot questions or abstract propositions. *See Housing Auth. v. Terry*, 114

Wn.2d 558, 570, 789 P.2d 745 (1990). A case is moot if a court can no longer provide effective relief. *See Orwick v. Seattle*, 103 Wn.2d 249, 253, 692 P.2d 793 (1984); *State v. Turner*, 98 Wn.2d 731, 733, 658 P.2d 658 (1983).

As noted above, Washam and Grajkowski contend, principally, that the December 15, 1990, election held by the 25th Legislative District Democratic caucus is invalid because (1) precinct committee officers were not properly notified of the election, and (2) the separate meeting requirement of RCW 29.42.070 was not followed. Even if there is merit to their arguments, we are unable to offer them any relief. It is undisputed that, pursuant to the provisions of RCW 29.42-.070, new elections were held in the 25th Legislative District's Democratic caucus following the 1992 general election.[1] As a consequence, any issues relating to elections in 1990 are moot.

A moot issue may be decided, however, when it is one of substantial or continuing public interest. *See Harvest House Restaurant, Inc. v. Lynden*, 102 Wn.2d 369, 373, 685 P.2d 600 (1984); *Sorenson v. Bellingham*, 80 Wn.2d 547, 558, 496 P.2d 512 (1972). The governing criteria for this determination are whether: (1) the issue presented is of a public or private nature; (2) it is desirable to provide guidance to public officers; and (3) the issue is likely to recur. *Harvest House*, 102 Wn.2d at 373; *Sorenson*, 80 Wn.2d at 558. The only issue which, in our view, satisfies this test, is the question of whether the notice and separate meeting requirements set forth in RCW 29.42.070 were satisfied. Because that issue is likely to recur, we are inclined to address it, notwithstanding the fact that we are unable to provide any relief to Washam

---

[1]RCW 29.42.070 provides in pertinent part:

"Within forty-five days after the statewide general election in even-numbered years, . . . the county chair of each major political party shall call separate meetings of all elected precinct committee officers in each legislative district . . . for the purpose of electing a legislative district chair. . .. The district chair shall hold office until the next legislative district reorganizational meeting two years later, or until a successor is elected."

and Grajkowski. Our review, however, is confined to that issue.[2]

NOTICE

It is undisputed that the call for the 25th Legislative District meeting/election was subsumed within the official call issued for the Pierce County Democratic Central Committee reorganizational meeting. Washam and Grajkowski claim, however, that the notice did not comply with RCW 29.42.070 because (1) it was ambiguous, (2) the call did not specify a time and place for the 25th Legislative District meeting, and (3) some 25th Legislative District precinct committee officers did not receive notice.

In an election law context, the term "call" is synonymous with the term "notice". *See* Black's Law Dictionary 256 (4th rev. ed. 1968). The trial court found that precinct committee officers in the 25th Legislative District were given proper notice of the district election meeting. Although the trial judge labeled this a finding, it is, arguably, a mixed finding of fact and conclusion of law. To the degree it is a finding of fact, it is not to be disturbed on appeal if it is supported by substantial evidence. *See World Wide Video, Inc. v. Tukwila*, 117 Wn.2d 382, 387, 816 P.2d 18 (1991), *cert. denied*, 112 S. Ct. 1672 (1992). Substantial evidence exists if the record contains evidence of sufficient quantity to persuade a fair-minded, rational person of the truth of the declared premise. *World Wide Video*, 117 Wn.2d at 387. Legal issues, of course, are reviewed de novo. *See DuVon v. Rockwell Int'l*, 116 Wn.2d 749, 753, 807 P.2d 876 (1991).

While Washam and Grajkowski have not raised a due process claim with respect to the notice given, notice is

---

[2]Although we have not addressed, in the body of this opinion, Washam and Grajkowski's contention that the trial judge erred in not disqualifying himself, we are satisfied that he did not err in that regard. It is apparent that the trial judge properly disclosed his prior affiliation with the Democratic Party and made known his contact with a named party to the suit and that party's attorney. None of the disclosures by the trial judge suggest that he could not be an impartial trier of fact.

proper, for purposes of due process, if, under the circumstances, it is reasonably calculated to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. *See Martin v. Meier,* 111 Wn.2d 471, 477-78, 760 P.2d 925 (1988). Here, the call was mailed to all precinct committee officers in the 25th Legislative District. It identified the time, place, and date of the Pierce County Democratic Central Committee meeting and it indicated that district elections were part of the agenda. Furthermore, it contained a map to assist the precinct committee officers in finding the meeting location. Additionally, precinct committee officers of the 25th Legislative District were sent a newsletter announcing the meeting, encouraging them to attend, and indicating that the 25th Legislative District precinct committee officers would caucus to elect a district leader following the central committee meeting.

 Washam and Grajkowski contend that notice of the district meeting must be personal[3] and separate from notice of the central committee meeting. RCW 29.42.070 does not specify what form notice must take. We are not prepared to say that the notice must be "personal" and "separate" as long as it is sent to each precinct committee officer and is understandable.

Washam and Grajkowski also contend that notice was insufficient because it did not specify a time or location for the 25th Legislative District meeting. While we agree that a proper notice must contain that information, we concur with the trial court's conclusion that the notice was sufficiently definite in that regard. While the call did not specify precisely what time the district elections were to be held, it did specify when and where the central committee meeting was to be held, and it indicated that district elections were a part of the agenda. Moreover, precinct committee officers were sent a newsletter announcing the Pierce County Central Committee meeting and indicating that the 25th Legislative

---

[3]Presumably they mean by personal letter addressed to each precinct committee officer.

District caucus would follow the county meeting. That, in our judgment, is sufficient.

Finally, Washam and Grajkowski claim that the 25th Legislative District Democratic election is invalid because several precinct committee officers did not receive notice. RCW 29.42.070 merely requires the county chair of each major political party to call separate meetings of all elected precinct committee officers in each legislative district for the purpose of electing a legislative district chair. It does not require the chair to ensure that every precinct committee officer actually received the notice. The record indicates that Beth Zubitis, Thompson's predecessor, mailed copies of the call to all precinct committee officers in the 25th Legislative District. Accordingly, the notice provisions of RCW 29.42.070 have been satisfied.

### Separate Meeting

Having concluded that notice was proper, we must next determine if the 25th Legislative District election satisfied the "separate meeting" requirement of RCW 29.42.070. Washam and Grajkowski contend that because the district elections occurred during the Democratic Central Committee meeting, rather than at a separately convened meeting, the separate meeting requirement was violated. They suggest that the trial court erred in holding to the contrary. The defendants, on the other hand, contend that the district elections occurred at a separate meeting which was held immediately after the central committee meeting, albeit in the same location.

Because the Pierce County Democratic Central Committee call stated that district elections were to be part of the agenda of the central committee meeting, one might infer that the two meetings were not separate. However, the call stated that the central committee meeting was to begin at 10 a.m., whereas minutes taken at the 25th Legislative District meeting indicated that the district meeting began at 12:40 p.m. Thus, there appears to be substantial evidence to support the trial judge's finding that the two meetings were separate.

CONCLUSION

In conclusion, we find no error by the trial court. In upholding its ruling we are mindful of the general proposition that courts should be slow to interfere in the internal affairs of political parties in the absence of a clear statutory violation, *see King Cy. Republican Cent. Comm. v. Republican State Comm.*, 79 Wn.2d 202, 208, 484 P.2d 387 (1971). We cannot say that there was such a violation here. We trust, however, that the Pierce County Democratic Central Committee will take such steps as it deems appropriate to ensure that notice and organization of future party meetings is beyond reproach.

Affirmed.

PETRICH and MORGAN, JJ., concur.

Reconsideration denied July 26, 1993.

Review denied at 123 Wn.2d 1006 (1994).