95 P.3d 1225 (2004)
STATE of Washington, Respondent,
v.
David Wayne ROSS, Petitioner.
State of Washington, Respondent,
v.
Russell James Hunter, Petitioner.
State of Washington, Respondent,
v.
Donald Janell Legrone, Petitioner.
Nos. 73784-3, 73895-5, 74171-9.
Supreme Court of Washington, En Banc.
Argued March 23, 2004.
Decided August 12, 2004.
*1227 Thomas Edward Doyle, Hansville, Gregory Charles Link, Jason Brett Saunders, Washington Appellate Project, Seattle, Patricia Anne Pethick, Tacoma, for Petitioners.
Steven Curtis Sherman, Thurston County Prosecutors Office, Olympia, Andrea Ruth Vitalich, King County Prosecutors Office/Appellate Unit, Seattle, for Respondents.
BRIDGE, J.
These defendants principally assert that the State's failure to prove at sentencing that their prior out-of-state and/or federal convictions were comparable to Washington State felony crimes and thus properly included in their offender scores, constitutes legal error. They contend that pursuant to our decision in In re Personal Restraint of Goodwin, 146 Wash.2d 861, 50 P.3d 618 (2002), they cannot waive a challenge to a sentence based on a miscalculated offender score. Division One and Division Two of the Court of Appeals denied their appeals holding that the sentencing courts properly included their prior out-of-state and/or federal convictions in their offender scores since these defendants affirmatively acknowledged at sentencing that their prior convictions were comparable to Washington State crimes. Because these defendants fail to show that any error of fact or law exists that supports their claims that the sentencing courts miscalculated their offender scores, we affirm the Courts of Appeals.

I

STATEMENT OF FACTS

David W. Ross
On October 1, 1999, a jury found Ross guilty of felony harassment, fourth degree assault, and four counts of unlawful imprisonment. At Ross' November 22, 1999 sentencing hearing, Ross' counsel expressly acknowledged that his criminal history properly included a 1988 Texas burglary conviction and that the State had properly calculated his offender score as 9. Accordingly, the sentencing court calculated Ross' offender score as 9 for each offense based, in part, on his 1988 Texas conviction. Ross appealed his sentence to Division Two of the Court of Appeals.
On appeal, Ross argued that the sentencing court improperly calculated his offender score because the State failed to prove that his 1988 Texas conviction was comparable to a Washington State crime. The Court of Appeals commissioner rejected Ross' initial appeal challenging his offender score, reasoning that Ross waived his challenge when his counsel affirmatively acknowledged at sentencing that his criminal history properly included his 1988 Texas conviction. Ct. of Appeals Ruling Affirming J. & Sentence at 6 (May 2, 2001) (citing State v. Ford, 137 Wash.2d 472, 483 n. 5, 973 P.2d 452 (1999)). The Court of Appeals denied Ross' motion to modify the commissioner's ruling.
Ross petitioned for review to this court. We granted his petition, but remanded it to Division Two pending our decision in Goodwin. After we reached our decision in Goodwin, the Court of Appeals commissioner again denied Ross' appeal. The Court of Appeals denied Ross' motion to modify the commissioner's ruling.
Ross petitioned for review to this court asserting that the sentencing court miscalculated his offender score by failing to require that the State prove his 1988 Texas conviction was comparable to a Washington State crime. We granted review.

Russell J. Hunter
On February 14, 2001, Hunter pleaded guilty to second degree attempted robbery. The State initially calculated Hunter's offender score as a 5 based on five prior out-of-state convictions. Hunter disputed his offender score arguing that two of his Oregon convictions were not comparable to Washington *1228 State crimes. At Hunter's March 9, 2001 sentencing hearing, the prosecutor conceded that the State could not prove that one of Hunter's Oregon drug convictions compared to a Washington State felony and thus, recommended that the sentencing court calculate Hunter's offender score as 4. In reply, Hunter's counsel conceded that Hunter's second challenged Oregon drug conviction was properly included in his offender score. Consequently, the court calculated Hunter's offender score as 4. Hunter appealed to Division One of the Court of Appeals.
On appeal, Hunter argued that the sentencing court miscalculated his offender score by including prior out-of-state convictions that the State had failed to prove were comparable to Washington State felony crimes. The Court of Appeals rejected Hunter's argument holding that the sentencing court correctly calculated his offender score since his counsel affirmatively acknowledged that his prior out-of-state convictions were properly included. State v. Hunter, 116 Wash.App. 300, 301, 65 P.3d 371 (2003) (citing Ford, 137 Wash.2d at 483 n. 5, 973 P.2d 452).
Hunter petitioned for review to this court asserting that the Court of Appeals erred when it held that the sentencing court had properly calculated his offender score. He also argues that due process and the Sentencing Reform Act (SRA) of 1981, chapter 9.94A RCW, requires that the State prove by a preponderance of the evidence that his out-of-state convictions compare to Washington State felony crimes. We granted review and consolidated his case with Ross' case.

Donald J. Legrone
On October 22, 2002, a jury found Legrone guilty of possession with intent to deliver cocaine for events that occurred on October 19, 2000. In his sentencing memorandum, Legrone's counsel included two prior federal drug convictions as part of Legrone's criminal history but argued that the court should calculate the two convictions as a one in his offender score. The sentencing court rejected Legrone's argument and counted both his federal convictions separately. Additionally, the court imposed three offender score points for each of Legrone's prior felony drug convictions in accordance with former RCW 9.94A.360(3) (2000), the statute in effect at the time Legrone committed his 2000 offense. Thus, the court calculated Legrone's offender score as 12. Legrone appealed to Division One of the Court of Appeals.
On appeal, Legrone argued the following: the sentencing court miscalculated his offender score when it failed to require that the State prove by a preponderance of the evidence his federal convictions were comparable to Washington State crimes; insufficient evidence existed to prove that he was guilty of possession with intent to deliver cocaine; the sentencing court erred when it refused to retroactively apply the 2002 amendments to RCW 9.94A.525(12), which eliminated provisions that tripled the number of offender score points for Legrone's prior drug convictions; and, the court's failure to retroactively apply the 2002 amendments to RCW 9.94A.525(12) violated his equal protection rights. In an unpublished opinion, the Court of Appeals rejected Legrone's claims holding that the sentencing court properly included Legrone's prior federal convictions in his offender score, that the State presented sufficient evidence, and that the 2002 amendments do not retroactively apply to crimes committed before the amendments' effective date nor violate Legrone's equal protection rights. State v. Legrone, noted at 117 Wash.App. 1044, 2003 WL 21500733, at *1-2.
Legrone petitioned for review to this court asserting that the Court of Appeals erred when it held that the sentencing court properly calculated his offender score and when the court failed to retroactively apply the 2002 amendments to RCW 9.94A.525(12). We granted review and consolidated his case with Ross' and Hunter's cases.

II

ANALYSIS

Mootness
As an initial matter, the State contends that Ross' case is moot since Ross' confinement and State supervision ended November *1229 25, 2003.[1] We have stated that "this court will not consider a question that is purely academic. A case is moot if a court can no longer provide effective relief." State v. Gentry, 125 Wash.2d 570, 616, 888 P.2d 1105 (1995) (footnote omitted) (citing Grays Harbor Paper Co. v. Grays Harbor County, 74 Wash.2d 70, 73, 442 P.2d 967 (1968); Washam v. Pierce County Democratic Cent. Comm., 69 Wash.App. 453, 457, 849 P.2d 1229 (1993), review denied, 123 Wash.2d 1006, 868 P.2d 872 (1994)). However, if a case presents an issue of continuing and substantial public interest and that issue will likely reoccur, we may still reach a determination on the merits to provide guidance to lower courts. State v. Blilie, 132 Wash.2d 484, 488 n. 1, 939 P.2d 691 (1997); Grays Harbor Paper Co., 74 Wash.2d at 73, 442 P.2d 967.
Here, Ross contends that the sentencing court miscalculated his offender score by including a 1988 Texas conviction. But the remedy for a miscalculated offender score is resentencing using a correct offender score. Ford, 137 Wash.2d at 485, 973 P.2d 452. Because Ross' confinement and supervision ended on November 25, 2003, it is undisputed that this court cannot provide him with any effective relief, i.e., less confinement due to a lower offender score.
Nonetheless, Ross argues that the "continuing and substantial public interest" exception should apply. Ross' Answer to State's Mot. to Dismiss Moot Appeal at 2 (citing Blilie, 132 Wash.2d at 488 n. 1, 939 P.2d 691). However, both Legrone and Hunter raise identical claims. Since resolution of their claims will provide sufficient guidance to lower courts, we decline to apply the "continuing and substantial public interest" exception to the mootness doctrine in Ross' case.

Offender Score Challenges
Hunter and Legrone assert that the sentencing courts miscalculated their offender scores. We have established that "illegal or erroneous sentences may be challenged for the first time on appeal." Ford, 137 Wash.2d at 477, 973 P.2d 452 (citing State v. Moen, 129 Wash.2d 535, 543-48, 919 P.2d 69 (1996); In re Pers. Restraint of Fleming, 129 Wash.2d 529, 532, 919 P.2d 66 (1996)). In State v. Paine, the Court of Appeals aptly stated that:
A justification for the rule is that it tends to bring sentences in conformity and compliance with existing sentencing statutes and avoids permitting widely varying sentences to stand for no reason other than the failure of counsel to register a proper objection in the trial court.
69 Wash.App. 873, 884, 850 P.2d 1369 (1993). If a defendant has been erroneously sentenced, we remand his case to the sentencing court for resentencing. Ford, 137 Wash.2d at 485, 973 P.2d 452.
To properly calculate a defendant's offender score, the SRA requires that sentencing courts determine a defendant's criminal history based on his or her prior convictions and the level of seriousness of the current offense. State v. Wiley, 124 Wash.2d 679, 682, 880 P.2d 983 (1994). The SRA also requires that prior out-of-state convictions be classified "according to the comparable offense definitions and sentences provided by Washington law."[2] RCW 9.94A.525(3). To do so, we have stated that " the sentencing court must compare the elements of the out-of-state offense with the elements of potentially comparable Washington crimes." Ford, 137 Wash.2d at 479, 973 P.2d 452 (citing State v. Morley, 134 Wash.2d 588, 606, 952 P.2d 167 (1998)). Under the SRA, the State bears the burden to prove by a preponderance of the evidence the existence and comparability of a defendant's prior out-of-state conviction. State v. McCorkle, 137 Wash.2d 490, 495, 973 P.2d 461 (1999) (citing Ford, 137 Wash.2d at 482-83, 973 P.2d 452).
Although the State generally bears the burden of proving the existence and comparability of a defendant's prior out-of-state *1230 and/or federal convictions, we have stated a defendant's affirmative acknowledgment that his prior out-of-state and/or federal convictions are properly included in his offender score satisfies SRA requirements. Ford, 137 Wash.2d at 483 n. 5, 973 P.2d 452. Here, both Hunter and Legrone affirmatively acknowledged at sentencing that their prior out-of-state and/or federal convictions were comparable to Washington State crimes and thus, were properly included in their offender score.
However, Hunter and Legrone argue that our decision in Goodwin abrogated Ford. They posit that the State's failure to prove the comparability of their prior out-of-state and/or federal convictions constitutes legal error and, under Goodwin, they cannot waive challenges to an offender score based in part on legal errors.
The Court of Appeals disagreed. It held that pursuant to our decision in Ford, the sentencing court was not required to consider further proof of the existence of Hunter's and Legrone's prior out-of-state and/or federal convictions after they affirmatively acknowledged the comparability of those convictions. Hunter, 116 Wash.App. at 302, 65 P.3d 371; Legrone, 117 Wash.App. 1044, 2003 WL 21500733, at *1. The court also distinguished Goodwin reasoning that:
Nothing in Goodwin, which involved a collateral challenge to a judgment and sentence that was invalid on its face, supports the proposition that the sentencing court must undertake a comparability determination despite the defendant's affirmative agreement with the State's classification.
Hunter, 116 Wash.App. at 302, 65 P.3d 371; Legrone, 117 Wash.App. 1044, 2003 WL 21500733, at *1. Thus, the Court of Appeals denied Hunter and Legrone's appeals. Id.
We agree with the Court of Appeals. In Goodwin, we considered a defendant's untimely personal restraint petition seeking relief from a miscalculated offender score. 146 Wash.2d at 865, 50 P.3d 618. There, the sentencing court had calculated Goodwin's offender score as a 4 based, in part, on three juvenile convictions that had clearly "washed out." Id. at 864-65, 50 P.3d 618. We held that "[i]n this case, the judgment and sentence is invalid on its face, and Goodwin's petition is not barred because he filed it over one year after the judgment was final." Id. at 866-67, 50 P.3d 618. Further, in response to the State's argument that Goodwin had waived his challenge to his sentence by stipulating to his offender score in his plea agreement, we stated that "in general a defendant cannot waive a challenge to a miscalculated offender score." Id. at 874, 50 P.3d 618. However, we noted that "[w]hile waiver does not apply where the alleged sentencing error is a legal error leading to an excessive sentence, waiver can be found where the alleged error involves an agreement to facts, later disputed, or where the alleged error involves a matter of trial court discretion." Id. (emphasis added). Because Goodwin's alleged sentencing error, i.e., inclusion of his three "washed out" juvenile convictions, was a legal error, we granted his petition and remanded his case for resentencing. Id. at 877-78, 50 P.3d 618.
Contrary to Hunter and Legrone's assertion, our decision in Goodwin does not control the inquiry here. Goodwin turned on the fact that that defendant's sentence contained obvious errors. Id. at 875-76, 50 P.3d 618. To invoke the waiver analysis set forth in Goodwin, a defendant must first show on appeal or by way of personal restraint petition that an error of fact or law exists within the four corners of his judgment and sentence. See id. Here, neither Hunter nor Legrone has met this initial threshold requirement since pursuant to our decision in Ford, neither has shown that the sentencing court committed any arguable factual or legal error by including their prior out-of-state and/or federal convictions in their offender score.[3] Therefore, we affirm the Court of Appeals.

*1231 Due Process and SRA Requirements
Hunter also argues that due process and the SRA require that the State prove the existence and comparability of his prior out-of-state convictions by a preponderance of the evidence. In Ford, we stated that:
the use of a prior conviction as a basis for sentencing under the SRA is constitutionally permissible if the State proves the existence of the prior conviction by a preponderance of the evidence. Similarly, where prior out-of-state convictions are used to increase an offender score, the State must prove the conviction would be a felony under Washington law.
137 Wash.2d at 479-80, 973 P.2d 452 (citation omitted) (citing State v. Ammons, 105 Wash.2d 175, 186, 713 P.2d 719, 718 P.2d 796 (1986); former RCW 9.94A.360(3) (1998); State v. Cabrera, 73 Wash.App. 165, 168, 868 P.2d 179 (1994)). Further, we reasoned that "[a]lthough facts at sentencing need not be proved beyond a reasonable doubt, fundamental principles of due process prohibit a criminal defendant from being sentenced on the basis of information which is false, lacks a minimum indicia of reliability, or is unsupported in the record." Ford, 137 Wash.2d at 481, 973 P.2d 452 (citing Torres v. United States, 140 F.3d 392, 404 (2nd Cir.1998)). Thus, to satisfy due process requirements, "`the facts relied upon by the trial court must have some basis in the [trial] record.'" Id. at 482, 973 P.2d 452 (quoting State v. Bresolin, 13 Wash.App. 386, 396, 534 P.2d 1394 (1975)).
Hunter asserts that the sentencing court imposed his sentence based, in part, on his prior out-of-state convictions and that the existence and comparability of these convictions was unsupported by the record in violation of the SRA and his due process rights. However, as noted in Ford, we held that under the SRA, a defendant's acknowledgement of the existence and comparability of his or her prior out-of-state convictions "allows the judge to rely on unchallenged facts and information introduced for the purposes of sentencing." Id. at 482-83, 973 P.2d 452 (citing RCW 9.94A.370(2)). There we rejected the State's argument that a defendant acknowledges facts and information at sentencing when he or she fails to object to the State's proffered offender score calculation based in part on a defendant's prior out-of-state convictions, but held that a defendant's affirmative acknowledgment of the existence and comparability of out-of-state convictions will render further proof unnecessary. Id. at 483 n. 5, 973 P.2d 452. Accordingly, since Hunter affirmatively acknowledged at sentencing that his prior out-of-state convictions were properly included in his offender score, we hold the sentencing court did not violate the SRA nor deny him due process.

Retroactive Application of the 2002 Amendments to RCW 9.94A.525(12)
Legrone argues that the 2002 amendments to RCW 9.94A.525(12) should retroactively apply to the calculation of his offender score. In 2002, the legislature enacted the following underscored amendments to RCW 9.94A.525(12):
If the present conviction is for ... manufacture of methamphetamine count three points for each adult prior ... manufacture of methamphetamine conviction and two points for each juvenile ... manufacture of methamphetamine offense. If the *1232 present conviction is for a drug offense and the offender has a criminal history that includes a sex offense or serious violent offense, count three points for each adult prior felony drug offense conviction and two points for each juvenile drug offense. All other adult and juvenile felonies are scored in subsection (8) of this section if the current drug offense is violent, or as in subsection (7) of this section if the current drug offense is nonviolent.

Laws of 2002, ch. 290, § 3(12) (emphasis added). The language in subsection (7) states:

If the present conviction is for a nonviolent offense and not covered by subsection (11) or (12) of this section, count one point for each adult prior felony conviction and one point for each juvenile prior violent felony conviction and 1/2 point for each juvenile prior nonviolent felony conviction.
Laws of 2002, ch. 290, § 3(7) (emphasis added); RCW 9.94A.525(7). The legislature also provided that "[s]ections 2 and 3 of this act take effect July 1, 2002, and apply to crimes committed on or after July 1, 2002." Laws of 2002, ch. 290, § 29 (emphasis added).
Prior to these amendments, former RCW 9.94A.360(12) (2000) provided that if a defendant was convicted of a drug offense, a sentencing court must:
[C]ount three points for each adult prior felony drug offense conviction and two points for each juvenile drug offense. All other adult and juvenile felonies are scored as in subsection (8) of this section if the current drug offense is violent, or as in subsection (7) of this section if the current drug offense is nonviolent.
(Emphasis added.) Since Legrone committed his drug offense before the effective date of the 2002 amendments, July 1, 2002, the sentencing court applied former RCW 9.94A.360(12), and counted three offender score points for each of Legrone's prior drug convictions.
Legrone asserts that the sentencing court should have counted only one point for each of his prior drug convictions pursuant to our decisions in Wiley, 124 Wash.2d 679, 880 P.2d 983, State v. Grant, 89 Wash.2d 678, 575 P.2d 210 (1978), and State v. Heath, 85 Wash.2d 196, 532 P.2d 621 (1975), where, as he contends, we stated that sentencing amendments which reduce punishment for certain offenses must be applied retroactively to pending prosecutions for crimes committed before the amendments' effective date. The State, however, argues that Legrone's claim is moot because along with his drug conviction, Legrone was also sentenced for kidnapping in the first degree, a serious violent offense.[4] Consequently, the State reasons that both the current and former versions of RCW 9.94A.525(12) require the sentencing court to count three points for each of Legrone's prior drug convictions.[5]
As noted, we have held that "this court will not consider a question that is purely academic. A case is moot if a court can no longer provide effective relief." Gentry, 125 Wash.2d at 616, 888 P.2d 1105 (footnote omitted) (citing Grays Harbor Paper Co., 74 Wash.2d at 73, 442 P.2d 967; Washam, 69 Wash.App. at 457, 849 P.2d 1229). See also Orwick v. City of Seattle, 103 Wash.2d 249, 253, 692 P.2d 793 (1984). If we decided in Legrone's favor, the remedy would be to remand his case to the sentencing court for resentencing; however, even if the court sentenced *1233 Legrone under the current version of RCW 9.94A.525(12), Legrone's offender score would remain the same. See Ford, 137 Wash.2d at 485, 973 P.2d 452 (holding that the remedy for a miscalculated offender score is resentencing using a correct offender score). Our consideration of Legrone's case is purely academic, and therefore moot.
Nonetheless, we may still reach a determination on the merits of a moot case if it presents an issue of "continuing and substantial public interest," and that issue will likely reoccur. Blilie, 132 Wash.2d at 488, 939 P.2d 691; Grays Harbor Paper Co., 74 Wash.2d at 73, 442 P.2d 967. This issue has generated a substantial number of lower court opinions, and implicates the length of sentences for defendants convicted of drug offenses, an issue that is of sufficient "continuing and substantial public interest" to justify an exception to the mootness doctrine in this instance.[6] Thus, we reach the merits of Legrone's claim.
Relying primarily on its decisions in State v. McCarthy, 112 Wash.App. 231, 48 P.3d 1014 (2002), review denied, 148 Wash.2d 1011, 62 P.3d 889 (2003) and State v. Kane, 101 Wash.App. 607, 5 P.3d 741 (2000), the Court of Appeals rejected Legrone's claim on its merits. Legrone, 117 Wash.App. 1044, 2003 WL 21500733, at *1. In McCarthy, the Court of Appeals held that the 2002 amendments to RCW 9.94A.525(12) lacked any language evidencing that the legislature intended these amendments to apply retroactively, and thus, pursuant to the savings clause, RCW 10.01.040, courts must sentence a defendant in accordance with the law in effect on the date he or she committed the crime.[7] 112 Wash.App. at 237, 48 P.3d 1014. Further, as in Kane, 101 Wash.App. at 614-17, 5 P.3d 741, the Court of Appeals reasoned that this court's decisions in Heath, 85 Wash.2d at 197-98, 532 P.2d 621 (holding that amendments to the section of the Washington Habitual Traffic Offenders Act, chapter 46.65 RCW, governing civil drivers license revocations applied retroactively to pending cases) and Grant, 89 Wash.2d at 684, 575 P.2d 210 (holding that the savings clause did not apply since the legislature had included language evidencing its intent that former RCW 70.96A.010 (1972) be applied retroactively to pending cases), do not require retroactive application of the 2002 amendments when calculating Legrone's offender score.[8]Legrone, 117 Wash.App. 1044, 2003 WL 21500733, at *1.
We agree with the Court of Appeals. We have stated that "[the]... savings clause is deemed a part of every repealing statute as if expressly inserted therein, and hence renders unnecessary the incorporation of an individual saving clause in each statute which amends or repeals an existing *1234 penal statute." State v. Hanlen, 193 Wash. 494, 497, 76 P.2d 316 (1938). See also State v. Fenter, 89 Wash.2d 57, 61, 569 P.2d 67 (1977) (holding that the savings clause applied to former criminal statutory provisions later repealed by the legislature; pursuant to the savings clause, the defendant should be charged under the former provisions in effect when he committed his crime); State v. Toney, 103 Wash.App. 862, 864, 14 P.3d 826 (2000) (unless the legislature evidences contrary intent, a statute's preamendment version applies to an offense committed before the amendment's effective date). To avoid application of the savings clause, we have not required that the legislature explicitly state its intent that amendments repealing portions of criminal and penal statutes apply retroactively to pending prosecutions for crimes committed before the amendments' effective date. Instead, "such intent need only be expressed in `words that fairly convey that intention.'" Kane, 101 Wash.App. at 612, 5 P.3d 741 (quoting State v. Zornes, 78 Wash.2d 9, 13, 475 P.2d 109 (1970)).[9]
In both Zornes and Grant, we held that the legislature included language which conveyed its intent that amendments to the criminal code be applied retroactively to pending cases. In Zornes, we reasoned that the language "the provisions of this chapter shall not ever be applicable to any form of cannabis" evidenced the intent that "[i]f the provisions of the uniform narcotics acts are not `ever' to be applied to cannabis, then they are not to be applied in any case, whether pending or arising in the future." 78 Wash.2d at 13-14, 475 P.2d 109 (emphasis added). Similarly, in Grant, we held that:
"intoxicated persons may not be subjected to criminal prosecution solely because of their consumption of alcoholic beverages" [was] an express declaration of a legislative intention that no person shall go to trial on such a charge after the effective date of the act, and [was] sufficient to overcome the presumption of [the savings clause].
89 Wash.2d at 684, 575 P.2d 210 (quoting RCW 70.96A.010) (emphasis added).
Here, however, the legislature has failed to express any intent that the 2002 amendments to RCW 9.94A.525(12) apply retroactively to pending prosecutions for crimes committed before the amendments' effective date. To the contrary, in Laws of 2002, ch. 290 § 3(12), the legislature refers to an offenders "present conviction." This is markedly different from the amendments at issue in Zornes and Grant where the legislature included language that clearly indicated that the amendments were intended to apply to all pending prosecutions regardless of the fact that defendants may have committed the crime before the amendments' effective date. In fact, the legislature has expressed the opposite intent here by explicitly providing that the 2002 amendments to RCW 9.94A.525(12) "apply to crimes committed on or after July 1, 2002."[10] Laws of 2002, ch. 290, § 29.
Our decisions in Heath and Wiley do not require us to reach a contrary result. Heath did not directly implicate the savings clause since it pertained to amendments governing civil driver license revocations under the Washington Habitual Traffic Offenders Act.[11] *1235 85 Wash.2d at 197-98, 532 P.2d 621. Similarly, the Wiley court did not address the effect of the savings clause, nor did it discuss instances where, as here, the legislature merely directs sentencing courts to count certain prior felony convictions differently when calculating offender scores. 124 Wash.2d at 687-88, 880 P.2d 983. Rather, the Wiley court addressed the effect of SRA amendments that downgrade crimes from a felony to a misdemeanor. Id. As the Court of Appeals aptly reasoned, "Legrone's reliance on Wiley is misplaced because the amendments in this case do not reflect a legislative determination that the offenses are less culpable." Legrone, 117 Wash.App. 1044, 2003 WL 21500733, at *2.

Equal Protection
Lastly, Legrone argues that the prospective application of the 2002 amendments to RCW 9.94A.525(12) violates the state constitution's equal protection clause, article I, section 12, by favoring offenders who committed crimes after the amendments' effective date. He principally relies on this court's first opinion in Grant County Fire Protection District No. 5 v. City of Moses Lake (Grant County I) where we held that the state constitution's equal protection clause affords additional protections than the federal constitution "where the issue concerns favoritism rather than discrimination." 145 Wash.2d 702, 729, 42 P.3d 394 (2002).
Legrone, however, fails to adequately address the effect of our 2004 opinion in Grant County Fire Protection District No. 5 v. City of Moses Lake (Grant County II) where we held that "[f]or a violation of article I, section 12 to occur, the law, or its application, must confer a privilege to a class of citizens." 150 Wash.2d 791, 812, 83 P.3d 419 (2004). We also clarified that the term "privileges and immunities" in article I, section 12 pertain only to "`those fundamental rights which belong to the citizens of the state by reason of such citizenship.'" Id. at 812-13, 83 P.3d 419 (quoting State v. Vance, 29 Wash. 435, 458, 70 P. 34 (1902)). Here, Legrone has failed to provide any authority that would support his claim that he has a fundamental right to the application of these sentencing amendments. Indeed, this court has previously held that a defendant's equal protection rights are not violated "merely because the Legislature changed the standard sentencing range for a crime" or "changed its view of criminal punishment which resulted in offenders being subject to different punishment schemes." In re Pers. Restraint of Stanphill, 134 Wash.2d 165, 175, 949 P.2d 365 (1998). Thus, Legrone's equal protection claim fails.

III

CONCLUSION
We dismiss Ross' petition for review as moot. However, we affirm the Court of Appeals holdings that Hunter and Legrone have failed to show that the sentencing court committed any error of facts or law when it calculated their offender scores. Further, the sentencing court did not violate the SRA nor violate Hunter's due process rights when it relied on his affirmative acknowledgment at sentencing that his offender score properly included his prior out-of-state convictions and that those convictions compared to Washington State felonies. Lastly, we affirm the Court of Appeals holding that the 2002 SRA amendments to RCW 9.94A.525(12) did not apply retroactively at sentencing for crimes committed before the amendments' effective date, and that the sentencing court's prospective application of the amendments does not violate Legrone's equal protection rights.
ALEXANDER, C.J., JOHNSON, MADSEN, SANDERS, IRELAND, CHAMBERS, OWENS and FAIRHURST, JJ., concur.
NOTES
[1] Rules of Appellate Procedure (RAP) 18.9(c)(2) provides that mootness can be raised by any party at any time.
[2] RCW 9.94A.525(3) also requires that "[f]ederal convictions... shall be classified according to the comparable offense definitions and sentences provided by Washington law."
[3] State v. Majors, 94 Wash.2d 354, 616 P.2d 1237 (1980) and State v. Nitsch, 100 Wash.App. 512, 997 P.2d 1000, review denied, 141 Wash.2d 1030, 11 P.3d 827 (2000) are distinguishable. In Majors, we held that a defect in the information pertaining to whether the defendant qualified as a habitual offender submitted as part of defendant's plea agreement, while technically erroneous, was not grounds for resentencing. 94 Wash.2d at 358, 616 P.2d 1237. In Nitsch, the Court of Appeals rejected a defendant's claim on appeal that the sentencing court had imposed an excessive sentence in violation of RCW 9.94A.400(1)(a) when it sentenced him without determining whether defendant's crimes had constituted the "same criminal conduct." 100 Wash.App. at 518-20, 997 P.2d 1000. The Court of Appeals held that the defendant had waived his claim by affirmatively acknowledging that his offender score had been correctly calculated and by failing to raise the issue at sentencing since a "same criminal conduct" determination requires the sentencing court to exercise its discretion. Id. at 520, 997 P.2d 1000. In Goodwin, we cited both these cases as examples where a defendant can waive his claim on appeal that the sentencing court miscalculated his offender score by agreeing to facts at sentencing that he later disputes. 146 Wash.2d at 875-76, 50 P.3d 618. Critically, both defendants in Nitsch and Majors pointed to specific errors to support their claims. Here, as noted above, neither Hunter nor Legrone have even arguably demonstrated that their prior out-of-state and/or federal convictions, which were included in their offender score, were not comparable to Washington State felony crimes.
[4] Legrone was sentenced for kidnapping in the first degree on the same day that he was sentenced for the drug offense in this case. When a defendant is sentenced for multiple crimes on the same date, the SRA classifies these convictions as "other current offenses" not "prior convictions." RCW 9.94A.525(1). But the SRA also mandates that a defendant's offender score is to be calculated by using "all other current and prior convictions as if they were prior convictions." RCW 9.94A.589(1). Thus, a sentencing court would be required to consider Legrone's kidnapping in the first degree conviction as a prior conviction when calculating Legrone's offender score.
[5] The 2002 amendments to RCW 9.94A.525(12) provide that "[i]f the present conviction is for a drug offense and the offender has a criminal history that includes a ... serious violent offense, count three points for each adult prior felony drug offense." Laws of 2002, ch. 290, § 3(12). The state contends that since kidnapping in the first degree is a serious violent offense, the current version of RCW 9.94A.525(12) requires a sentencing court to count Legrone's adult prior drug felony offenses as three points each in his offender score.
[6] The Court of Appeals has considered this same issue in the following cases: State v. McCarthy, 112 Wash.App. 231, 48 P.3d 1014 (2002), review denied, 148 Wash.2d 1011, 62 P.3d 889 (2003); State v. Kane, 101 Wash.App. 607, 5 P.3d 741 (2000); State v. Grayson, noted at 119 Wash.App. 1042, 2003 WL 22885144; State v. Francis, noted at 118 Wash.App. 1072, 2003 WL 22384094; State v. Mitchell, noted at 118 Wash.App. 1073, 2003 WL 22384882; State v. Rockwell, noted at 117 Wash.App. 1058, 2003 WL 21652543; State v. Kirby, noted at 117 Wash.App. 1042, 2003 WL 21500736.
[7] The savings clause provides that:

Whenever any criminal or penal statute shall be amended or repealed, all offenses committed or penalties or forfeitures incurred while it was in force shall be punished or enforced as if it were in force, notwithstanding such amendment or repeal, unless a contrary intention is expressly declared in the amendatory or repealing act, and every such amendatory or repealing statute shall be so construed as to save all criminal and penal proceedings, and proceedings to recover forfeitures, pending at the time of its enactment, unless a contrary intention is expressly declared therein.
RCW 10.01.040.
[8] In Kane, the Court of Appeals considered whether legislative amendments requiring alternative treatment for defendants who committed certain drug offenses applied retroactively at sentencing for crimes committed before the amendments' effective date. 101 Wash.App. 607, 5 P.3d 741. Kane argued that the amendments should be applied retroactively pursuant to our opinions in Grant and Heath. Id. at 612, 5 P.3d 741. The court rejected Kane's argument noting that the amendments at issue in Grant expressed the legislature's intent for courts to apply them retroactively, and therefore, the savings clause did not apply. Id. at 615, 5 P.3d 741. The court also dismissed the relevancy of this court's decision in Heath since that amendment did not directly implicate the applicability of the savings clause. Id. at 616, 5 P.3d 741.
[9] In City of Kennewick v. Fountain, 116 Wash.2d 189, 192-93, 802 P.2d 1371 (1991) this court recognized that the United States Supreme Court opinion in United States v. Batchelder, 442 U.S. 114, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979) overruled our equal protection analysis in Zornes, which is not an issue in this case.
[10] The legislature has also stated that generally amendments to the SRA's sentencing provisions apply prospectively only. See RCW 9.94A.345 ("Any sentence imposed under [the SRA] shall be determined in accordance with the law in effect when the current offense was committed.").
[11] The Heath court stated that

[a]n additional reason for holding the legislation to operate retroactively is that it, in effect, reduced the penalty for a crime. When this is so, the legislature is presumed to have determined that the new penalty is adequate and that no purpose would be served by imposing the older, harsher one.
85 Wash.2d at 198, 532 P.2d 621. The court also noted "[t]his rule has even been applied in the face of a statutory presumption against retroactivity." Id. (citing In re Estrada, 63 Cal.2d 740, 408 P.2d 948, 48 Cal.Rptr. 172 (1965); People v. Oliver, 1 N.Y.2d 152, 134 N.E.2d 197, 151 N.Y.S.2d 367 (1956)). Legrone argues that this language supports his claim. However, since Heath involved amendments to the portion of the Washington Habitual Traffic Offenders Act that governs license revocation proceedings, the savings clause was not directly implicated. 85 Wash.2d at 197-98, 532 P.2d 621. Thus, we refuse to extend this language in Heath to cases where the savings clause clearly requires this court to enforce statutory amendments to the penal code prospectively.