# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 77783-1-I |
| Respondent, | |
| | DIVISION ONE |
| v. | |
| | UNPUBLISHED OPINION |
| ROBERT GUY OSBORN, | |
| Appellant. | FILED: April 15, 2019 |

APPELWICK, C.J. — A jury found Osborn guilty of possession of a controlled substance—heroin. He argues that the trial court erred in finding that he did not have immunity from prosecution under RCW 69.50.315. He also argues that the trial court erred by including an out-of-state prior conviction in his offender score, without conducting a comparability analysis. We affirm the conviction, but remand for resentencing.

## FACTS

On September 29, 2015, Police Officer Geoffrey Albright responded to a request from the fire department to assist at the scene near Virginia Avenue. When Albright arrived, he was told that there had been a report of someone passed out behind the wheel of a car parked in an alley. The firefighters woke up the person in the car, and that man, Robert Osborn, gave a firefighter a plastic bag that contained a needle, pieces of dirty cotton, and a brown substance that was later tested and determined to be heroin. Osborn told Officer Albright that he did not

know where the bag came from and that it was not his. Osborn told the officer that it was his car, and that he was currently living in it. Albright arrested Osborn and read him his Miranda[1] rights.

The State charged Osborn with possession of heroin. Pursuant to RCW 69.50.315, Osborn moved to suppress the evidence. He argued that police discovered the heroin as a result of someone reporting what he or she believed was an overdose, and that this incident fell within the protection of the statute.

The trial court found that the statute "provides protection to two classes: (1) a person who calls for medical help to report someone having an overdose; and (2) a person who experiences an overdose calling for help." It concluded that Osborn did not fit either of those categories, and denied his motion to suppress.

After the first trial, the jury was deadlocked and the court declared a mistrial. The second jury found Osborn guilty of possession of a controlled substance. At sentencing, the State calculated Osborn's offender score, and included an Idaho burglary conviction. It stated, "The defendant's criminal history includes nine adult felonies. Two of those effectively wash, though. There were three felonies stemming from one case in Idaho." The State calculated Osborne's offender score as a six. The court imposed a sentence based on the State's calculation of the offender score, which included one Idaho felony conviction. Osborn appeals.

---

[1] Miranda v. Arizona, 384 U.S. 436, 478-79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

DISCUSSION

Osborn makes two arguments. First, he argues that the trial court erred in concluding that he was not immune from prosecution under RCW 69.50.315. Second, he argues that the trial court erred in including the Idaho prior conviction in his offender score, because it failed to conduct the required comparability analysis.

## I.   Immunity from Prosecution

Osborn argues first that the trial court erred in concluding that he was not protected from prosecution by RCW 69.50.315. He asserts that, under the plain language of the statute, he was immune from prosecution for possession. Alternatively, he argues that, if this court finds the statute ambiguous, it must be construed in his favor.

### A. Statutory Interpretation

We review a question of statutory construction de novo. State v. Roggenkamp, 153 Wn.2d 614, 621, 106 P.3d 196 (2005). The purpose of statutory interpretation is to determine and give effect to the intent of the legislature. State v. Evans, 177 Wn.2d 186, 192, 298 P.3d 724 (2013). When interpreting a statute, the court first looks to the "plain language enacted by the legislature, considering the text of the provision in question, the context of the statute in which the provision is found, related provisions, and the statutory scheme as a whole." Id. Plain language that is not ambiguous does not require construction. Id. Courts neither add language to nor delete language from an unambiguous statute; instead, all language must be given effect, without rendering any part of the statute

3

meaningless or superfluous. State v. J.P., 149 Wn.2d 444, 450, 69 P.3d 318 (2003).

Where statutory language is amenable to more than one reasonable interpretation, it is deemed to be ambiguous. Roggenkamp, 153 Wn.2d at 621. Legislative history, principles of statutory construction, and relevant case law may provide guidance in construing the meaning of an ambiguous statute. Id.

B. RCW 69.50.315

Osborn asserts that he was immune from prosecution pursuant to RCW 69.50.315(2). The statute provides,

> A person who experiences a drug-related overdose and is in need of medical assistance shall not be charged or prosecuted for possession of a controlled substance pursuant to RCW 69.50.4013, or penalized under RCW 69.50.4014, if the evidence for the charge of possession of a controlled substance was obtained as a result of the overdose and the need for medical assistance.

RCW 69.50.315(2).

The State charged Osborn under RCW 69.50.4013 for possession of heroin. He argues that, because firefighters found him unconscious when they arrived at the scene, a reasonable inference was that he was experiencing a "drug-related overdose" as the term is used in the statute. He points to Officer Albright's testimony, in which he stated that the fire department was called to the scene to respond to a report of a "slumper," a term that is commonly associated with heroin use or an overdose. Albright also testified that the initial call was to respond to someone "passed out behind the wheel of a vehicle in the alleyway." Albright stated that the first responder, firefighter Timothy Mann, had arrived at the scene

4

before him and "somehow roused" Osborn. Osborn asserts that, under these facts, he was immune from prosecution under the plain language of the statute.

Osborn challenges the trial court's conclusion that "[m]edical personnel delivered no aid. No facts suggest that Osborn was using drugs, or needed aid."

Albright testified that the firefighters who arrived before him "were able to awake[n] the person in the vehicle." Albright did not administer medical treatment to Osborn, nor did he see anyone administer medical treatment. When asked if there was anything in his report indicating that the fire department administered any medical treatment such as Naloxone[2] or Narcan, Albright responded,

> Not directly. In a way -- if the fire department administers Naloxone, they transport to the hospital 100 percent of the time. So the fact that they did not transport him, I know that they did not give him Naloxone.
>
> Likewise they would transported [sic] him if they gave him [cardiopulmonary resuscitation] and any other kind of things commonly associated with a heroin overdose. In this case it was simply waking him up.

There was no evidence that established that medical aid was given to Osborn. Nor was there evidence that Osborn used drugs prior to his interaction with the fire department and law enforcement, or that he needed aid when they arrived. Under the plain language of the statute, a person who experiences a drug-related overdose and is in need of medical assistance will not be charged or prosecuted for possession of a controlled substance, if the evidence was obtained as a result of the overdose and need for medical assistance. RCW 69.50.315(2).

---

[2] Naloxone is used to counteract the effects of heroin, and is administered to a person experiencing an overdose.

We must give effect to all the language of the statute, without rendering any part of the statute meaningless or superfluous. Here, there is no evidence that Osborn experienced an overdose and needed medical assistance. The evidence supports the trial court's conclusion.

Therefore, the trial court did not err in concluding that Osborn was not immune from prosecution under RCW 69.50.315(2).

C. Ambiguity in Statute

Osborn also asserts that the language used in RCW 69.50.315(2) is similar to that in RCW 69.41.095, and that the definition of "opioid-related overdose" of RCW 69.41.095(5)(c) should apply to the term "drug-related overdose" in RCW 69.50.312(2). He argues that he was experiencing an "opioid-related overdose" as defined in RCW 69.41.095(5)(c). Osborn stresses that he was suffering from "at least a 'decreased level of consciousness.'" Moreover, Osborn argues that if the statute "remains ambiguous," the rule of lenity requires courts to interpret the statute in his favor.

RCW 69.41.095(5) provides,

For purposes of this section, the following terms have the following meanings unless the context clearly requires otherwise:

. . . .

(c) "Opioid-related overdose" means a condition including, but not limited to, extreme physical illness, decreased level of consciousness, respiratory depression, coma, or death that: (i) Results from the consumption or use of an opioid or another substance with which an opioid was combined; or (ii) a lay person would reasonably believe to be an opioid-related overdose requiring medical assistance.

6

This definition is in the context of a statute which authorizes a practitioner to prescribe or administer opioid overdose medication. See RCW 69.41.095. That definition has no application here. RCW 69.50.315(2) applies when a person is actually experiencing a drug-related overdose and needs medical assistance. The existence of the definition in RCW 69.41.095 does not render RCW 69.50.315(2) ambiguous. The rule of lenity does not apply.

## II. Offender Score

Osborn argues second that the trial court erred in including the Idaho prior conviction in his offender score. The State concedes that it was error for the court to include the conviction without conducting the comparability analysis. It agrees with Osborn that this court should remand for resentencing for the trial court to conduct a legal and factual comparability analysis.

To properly calculate a defendant's offender score, the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW, requires that sentencing courts determine a defendant's criminal history based on his prior convictions and the level of seriousness of the current offense. State v. Ross, 152 Wn.2d 220, 229, 95 P.3d 1225 (2004). The SRA also requires that prior out-of-state convictions be classified according to the comparable offense definitions and sentences provided by Washington law. Id.; RCW 9.94A.525(3).

A challenge to the offender score calculation may be raised for the first time on appeal. State v. Ford, 137 Wn.2d 472, 477-78, 973 P.2d 542 (1999). Where evidence is insufficient to support the conclusion that the disputed convictions would be classified as felonies under Washington law, resentencing is required.

Id. at 485. On remand, both parties may present and the court may consider all relevant evidence regarding criminal history, including history and information not previously presented. State v. Cobos, 182 Wn.2d 12, 15-16, 338 P.3d 283 (2014).

There is no evidence that the court below conducted a comparability analysis. Osborn did not object to the court including his Idaho burglary conviction in his offender score. But, Osborn did not affirmatively accept the inclusion. The evidence is insufficient to support the conclusion that the Idaho prior conviction is legally or factually comparable to a felony under Washington law.

We affirm the conviction but remand for the court to conduct a legal and factual comparability analysis on resentencing.

_Appelwick, C.J._

WE CONCUR: