IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 31200-3-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DENNIS LEROY SPROUL, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, C.J. — Dennis Sproul, having been convicted of second degree burglary, appeals the trial court's calculation of his offender score, its finding at the time of sentencing that it had considered his present or future ability to pay legal financial obligations (LFOs), and its order that he begin making payments toward the LFOs immediately. Because Mr. Sproul, at sentencing, affirmatively acknowledged the existence and comparability of the out-of-state convictions that he now seeks to challenge and failed to object to the LFO finding and payment order, we will not consider either challenge on appeal. We affirm the judgment and sentence.

FACTS AND PROCEDURAL BACKGROUND

Dennis Sproul was found guilty of one count of burglary in the second degree under RCW 9A.52.030(1) following a jury trial. Mr. Sproul's criminal history provided

to the trial court before sentencing included Montana convictions for two counts of

felony theft. In its sentencing memorandum, the State argued that the Montana felony

theft convictions were comparable to Washington's offense of theft in the second degree,

a class C felony, and should count toward his criminal history for sentencing purposes.

The State submitted a certified copy of a judgment from Powell County, Montana,

reflecting the fact that Mr. Sproul was sentenced in January 2006 to two counts of felony

theft based upon a guilty plea.

At the sentencing hearing, the following exchange occurred between the trial

court; Prosecutor Walter Edgar; and Mr. Sproul's defense lawyer, Jeffrey Barker:

> [THE COURT:] Mr. Edgar, is the state ready?
> MR. EDGAR: The state is ready, your Honor.
> Your Honor, I guess I have a question for Mr. Barker. And that is as to—whether or not Mr. Sproul is agreeing to the state's determination of criminal history, number of convictions and offender score.
> MR. BARKER: I guess I didn't hear what he wanted me to agree to.
> THE COURT: The—
> MR. BARKER: We do agree that—
> THE COURT: —convictions and—
> MR. BARKER: —there are—
> THE COURT: —offender score.
> MR. BARKER: Well, we do agree that there are two convictions out of Snohomish County, a burglary and a violation of no-contact order, which ran concurrent according to the judge and were same criminal history. In our opinion—in my opinion that makes that a two-point felony. Mr. Sproul indicates that he was told by the judge at that time that it would be a one-point felony. I told him that judge was inaccurate.
> *There are also two additional theft charges in Montana both of which were felony offenses in Montana and also would be here. Each of those would count a point.*
> And there is a Chelan County—possession of stolen property.

2

> *So under my rendition of it, he would be a five.*
> THE COURT: Mr. Edgar?
> MR. EDGAR: And that is what the state would have as well, your
> Honor. Those same convictions, and an offender score of five, with a
> standard range of 17 to 22 months.
> THE COURT: Is that the standard range you get, Mr. Barker?
> MR. BARKER: *Yes.*
> THE COURT: Okay.
> MR. EDGAR: Your Honor, if there's no further discussion about
> criminal history and any other matter I'm ready to proceed with a
> recommendation.
> THE COURT: Okay.

Report of Proceedings (RP) at 144-46 (emphasis added). There was no further discussion about criminal history, other than Mr. Sproul's personal objection to treating his Snohomish County convictions as supporting two points.

In announcing Mr. Sproul's sentence, the trial court stated that it would "agree with the state's sentencing memorandum as to these thefts in Montana, that they count as . . . thefts in Washington, [as] Class C felonies—. And the court would find that Mr. Sproul [has an offender score of] five." RP at 148. He did not engage in a comparability analysis. Mr. Sproul's lawyer did not object to the court's failure to conduct a comparability analysis, to the court's inclusion of the two Montana convictions in calculating the offender score, or to the court's reliance on a standard range that was based on an offender score of five.

The judgment and sentence ordered Mr. Sproul to pay LFOs of $1,950, comprising a $500 victim assessment, a $200 filing fee, a $250 jury demand fee, $400 in

3

court appointed attorney fees, a $500 fine under RCW 9A.20.021, and a $100 DNA (deoxyribonucleic acid) collection fee. This was the amount requested by the State, to which Mr. Sproul raised no objection.

While the trial court did not ask any questions or make any statements during the sentencing hearing about Mr. Sproul's present or future ability to pay the LFOs, the judgment and sentence included a preprinted paragraph 2.5 stating that "[t]he Court has considered the total amount owing, the defendant's present, and future ability to pay legal financial obligations, including the defendant's financial resources and the likelihood that the defendant's status will change." Clerk's Papers (CP) at 98. The court ordered that Mr. Sproul begin making monthly payments of $25 per month immediately.

Mr. Sproul appeals.

## ANALYSIS

Mr. Sproul makes two assignments of error. First, he contends that the trial court erred in including two Montana felony theft convictions in his offender score because (1) the court failed to conduct a comparability analysis and (2) the State did not prove that the offense was comparable to a felony in Washington. Second, he argues that an implied finding that he had the present or future ability to pay the LFOs was not supported by the record. For reasons that we address in turn, both issues were waived.

4

I. Including Montana Convictions in Offender Score

A defendant's offender score, together with the seriousness level of his current offense, dictates the standard sentence range used in determining his sentence. RCW 9.94A.530(1). To calculate the offender score, the court relies upon its determination of the defendant's criminal history, comprising "the list of a defendant's prior convictions and juvenile adjudications, whether in this state, in federal court, or elsewhere." RCW 9.94A.030(11). A prior conviction from another state is included in a defendant's offender score only if the foreign crime is comparable to a Washington felony. *See id.*; RCW 9.94A.525(3). The State bears the burden of proving by a preponderance of the evidence the existence and comparability of the out-of-state offenses. *State v. Ross*, 152 Wn.2d 220, 230, 95 P.3d 1225 (2004).

Notwithstanding the State's usual burden of proof, where a defendant affirmatively acknowledges that his prior out-of state conviction is comparable and properly included in his offender score, the trial court needs no further evidence or analysis. *State v. Wilson*, 170 Wn.2d 682, 244 P.3d 950 (2010). In such a case, the defendant waives the right to later raise a factual dispute over comparability, while retaining the right to later raise a legal dispute. *Ross*, 152 Wn.2d at 231. To determine whether a dispute is factual, we ask whether any facts must be acknowledged or compared in order to determine whether the out-of-state conviction is comparable to a Washington felony offense. *Cf. Wilson*, 170 Wn.2d at 690 (finding that a legal question

5

as to felony versus misdemeanor status is presented if "no facts must be acknowledged, or compared").

For the first time on appeal, Mr. Sproul points out a discrepancy between the certified Montana judgment presented by the State and the trial court's identification of the date of the Montana crimes and convictions set forth in the judgment and sentence. The certified copy of the Powell County, Montana, judgment filed by the State bears a January 2006 date. Yet in sentencing Mr. Sproul for the Washington crimes, the court listed his two Powell County, Montana, convictions for felony theft as having a sentencing date in July 2005 and a "date of crime" of August 3, 2004. CP at 97. Relying on the August 2004 crime date, Mr. Sproul argues that the Montana statutes defining felony theft in effect on that date was broader than felony theft in Washington, meaning that, to determine comparability, it would be necessary to look into the record of his Montana conviction to determine whether his conduct would have constituted felony theft in Washington—something that was not done below. This possible factual dispute was waived, however, by Mr. Sproul's acknowledgment at the time of sentencing that "[t]here are also two additional theft charges in Montana both of which were felony offenses in Montana and also would be here. Each of those would count a point." RP at 145.[1] The date discrepancy between the certified copy of the Montana judgment and the

---

[1] If, as appears may be the case, the trial court made a clerical mistake in listing the dates of Mr. Sproul's Montana crimes and sentencing in the judgment and sentence,

trial court's listing of his criminal history does not change the fact that Mr. Sproul waived any issue over the existence or comparability of two Montana felony theft convictions.

Mr. Sproul's acknowledgement of the existence and comparability of two Montana felony theft convictions allowed the trial court to include them in the offender score calculation without further proof of classification. *State v. Ford*, 137 Wn.2d 472, 483 n.5, 973 P.2d 452 (1999). And our Supreme Court held in *Ross* that no denial of due process occurs where a defendant's affirmative acknowledgement of the existence and comparability of out-of-state convictions relieves the State of its burden of proving those facts. 152 Wn.2d at 232-33.

## II.    Legal Financial Obligations

The trial court was not presented with evidence or argument bearing on Mr. Sproul's present or future ability to pay LFOs other than Mr. Sproul's statement, when given the opportunity to allocute, that "I want to—do my best to change my life and make better choices; that's for sure. That's all I can say. I'm sick of this life." RP

---

Mr. Sproul's remedy was to file a motion under CrR 7.8(a), which provides that
>   [c]lerical mistakes in judgments, orders or other parts of the record . . . may
>   be corrected by the court at any time of its own initiative or on the motion
>   of any party and after such notice, if any, as the court orders. Such
>   mistakes may be so corrected before review is accepted by an appellate
>   court, and thereafter may be corrected pursuant to RAP 7.2(e).

A clerical error is one that, when amended, "would correctly convey the intention of the court based on other evidence." *State v. Priest*, 100 Wn. App. 451, 456, 997 P.2d 452 (2000).

at 148. Evidence of ability to pay was unnecessary to support the mandatory financial obligations imposed by the court and, with respect to the financial obligations that were discretionary, Mr. Sproul made no objection at the sentencing hearing and thereby failed to preserve a claim of error.

The $500 victim assessment, $100 DNA collection fee, and $200 criminal filing fee are each required irrespective of the defendant's ability to pay. *State v. Lundy*, 176 Wn. App. 96, 102, 308 P.3d 755 (2013) (noting that, for these costs, "the legislature has directed expressly that a defendant's ability to pay should not be taken into account").

As to the discretionary LFOs, a sentencing court is subject to a statutory requirement that it take some account of a defendant's ability to pay them in the future. *State v. Duncan*, ___ Wn. App. ___, ___ P.3d ___, 2014 WL 1225910, at *2, *petition for review filed*, No. 90188-1 (Wash. April 30, 2014); RCW 10.01.160(3); RCW 9.94A.760(2). Yet the rule established by each division of this court is that a defendant may not challenge for the first time on appeal either a sentencing court's compliance with the statutory requirement or its determination of his ability to pay. *Duncan*, 2014 WL 1225910, at *6; *State v. Calvin*, 176 Wn. App. 1, 316 P.3d 496, 507-08, *petition for review filed*, No. 89518-0 (Wash. Nov. 12, 2013); *State v. Blazina*, 174 Wn. App. 906, 911, 301 P.3d 492, *review granted*, 178 Wn.2d 1010 (2013). Mr. Sproul did not object in the trial court to the trial court's finding or its payment order. We will not consider his challenges to them. RAP 2.5(a).

No. 31200-3-III
*State v. Sproul*

Affirmed.

A majority of the panel has determined that this opinion will not be printed in the

Washington Appellate Reports but it will be filed for public record pursuant to RCW

2.06.040.

_____
Siddoway, C.J.

WE CONCUR:

_____
Fearing, J.

_____
Rawson, J.P.T.

9