[No. 61024-0.    En Banc.    September 22, 1994.]

THE STATE OF WASHINGTON, *Petitioner*, v. KENNETH LAVONE WILEY, *Defendant*, ROBERT HUNT, *Respondent*.

*Norm Maleng, Prosecuting Attorney*, and *Ann Foerschler, Deputy*, for petitioner.

*Mary Jane Ferguson* of *Washington Appellate Defender Association*, for respondent.

GUY, J. — Respondent Robert Hunt contends the trial court miscalculated his offender score under the Sentencing Reform Act of 1981 (SRA). At issue is whether the trial court must determine if three pre-1975 convictions for grand larceny, felonies at the time, constitute felonies or misdemeanors under the current theft statute. Hunt argues the three convictions would be misdemeanors today because of the dollar value of the stolen property at the time of the convictions and therefore should not count toward his offender score. The Court of Appeals agreed and remanded for resentencing. We reverse and affirm the trial court.

FACTS

On January 28, 1991, a King County jury found Hunt guilty of residential burglary in violation of RCW 9A.52.025. Hunt, with at least two others, stole a television, a computer, a camera and a pair of binoculars from a houseboat during a daytime burglary. The police subsequently recovered the stolen goods and returned them to the houseboat's owner.

At Hunt's sentencing on April 19, 1991, the State claimed that under the SRA Hunt had an offender score of 9 and a seriousness level of IV. The standard range of sentences for these scores is 63 to 84 months. To justify a sentence in this range, the State introduced the following three convictions as prior felonies:

1. 1971 grand larceny, King County cause 58535.
2. 1972 attempted grand larceny, King County cause 62268.
3. 1974 grand larceny, King County cause 70045.

Hunt had pleaded guilty to these charges and received various indeterminate sentences. The State claimed each of the three convictions added one point to Hunt's offender score.

The State introduced what scant information existed about these three convictions. No transcript of Hunt's plea survived for the 1971 conviction. The 1972 conviction was for attempting to take a camera and projector from the Unigard Insurance office. The 1974 conviction involved a similar charge — possession of a stolen camera valued at more than $75. Under the former larceny statute, $75 was the cutoff between a gross misdemeanor and a felony. According to Defendant, no evidence exists on the *actual* dollar values of the stolen property.

At Hunt's 1991 sentencing, the trial court concurred with the State and counted the three prior convictions as felonies. The trial court sentenced Hunt to 74 months' imprisonment for the burglary, the midpoint of the sentencing range for Hunt's offender and seriousness scores.

Hunt appealed, claiming the Legislature's overhaul of the criminal code in 1975 (and the reclassification of larceny as theft) changed Hunt's pre-1975 convictions into gross misdemeanors, exempting them from his offender score. Before 1975, former RCW 9.54.090 divided larceny into grand larceny, a felony — stealing property worth more than $75 — and petit larceny, a misdemeanor — stealing less than $75.

RCW 9A.56 changed these previous distinctions for any offense committed after July 1, 1976. The two crimes of petit and grand larceny became three degrees of theft: first degree theft, a class B felony, stealing property worth more than $1,500; second degree theft, a class C felony, property worth more than $250 but less than $1,500; and third degree theft, a gross misdemeanor, property worth less than $250. RCW 9A.56.030-.050. Hunt argued his three prior convictions constitute third degree theft, a gross misdemeanor.

The Court of Appeals agreed with Hunt, concluding, "the present classification of crimes should be used to determine the pre-SRA classification of the crime for offender score and sentencing purposes." *State v. Wiley*, 71 Wn. App. 244, 247, 857 P.2d 1062 (1993).

Because it could not determine the value of the stolen property in the larceny convictions, the Court of Appeals remanded the case to the trial court for resentencing. According to the Court of Appeals' opinion, the State on remand has the opportunity to prove that Hunt's prior offenses involved property worth more than $250 and therefore are felonies under the theft statutes. If the State fails to prove this, the trial court must subtract three points from Hunt's offender score.

The State now seeks review of the Court of Appeals' decision.

## ISSUES PRESENTED

The State's petition presents the following issue on review: When does a change in law apply retroactively to the prior convictions used to calculate an offender score under the SRA? We reach two conclusions. First, a change in the elements of a crime does not affect the status of a prior conviction. Second, the reclassification of an entire crime to a lower level of punishment does apply retroactively to the calculation of an offender score.

## ANALYSIS

The SRA created a grid of sentencing ranges which vary by the defendant's offender score and the seriousness level of the crime. Because the offender and seriousness scores have enormous influence over the actual time a defendant serves in prison, sentencing courts spend much effort deciding between rival calculations of the two scores. The present case is no exception. Here, we examine the methods used to calculate the offender score and, in particular, how to treat pre-1975 convictions for specific offenses which no longer appear in the penal code.

The offender score measures a defendant's criminal history. The SRA directs courts to calculate an offender score by totaling a defendant's convictions for felonies and certain juvenile offenses. With one exception, misdemeanors do not count.[1] Washington Sentencing Guidelines Comm'n, *Implementation Manual* I-7 (1991); RCW 9.94A.360. Furthermore, for out-of-state convictions, the SRA requires courts to translate the convictions "according to the comparable offense definitions and sentences provided by Washington law." RCW 9.94A.360(3).

The offender score estimates the dangerousness and overall culpability of the defendant. In other words, the sentencing court determines how many times the defendant has committed a felony prior to *this* conviction.

Hunt challenges his offender score with a straightforward argument: His criminal conduct in the early 1970's now constitutes a misdemeanor, not a felony. In 1975, the Legislature increased from $75 to $250 the dollar amount of stolen property necessary to commit a felony. Because one of the purposes of the SRA is to make sentences "commensurate with the punishment imposed on others committing similar offenses" (RCW 9.94A.010(3)), Hunt argues the trial court should not treat pre-1975 larcenies of $75 more harshly than post-1975 thefts of the same amount. According to Hunt, the replacement of the crime of larceny with that of theft retroactively changes his felony convictions to misdemeanors.

The State responds by arguing that the Legislature abolished grand larceny in 1975 and created no equivalent crime. In the State's view, the court must compare the maximum punishment available for each prior conviction with the maximum punishment for the different classes of felonies (A, B, and C) and misdemeanors. Because grand larceny had a 15-year maximum penalty, it corresponds to a class B felony with a maximum penalty of 10 years. First degree theft is a class B felony. Under the statute for crimes

---

[1]For current convictions of felony traffic offenses, the SRA counts serious misdemeanor traffic offenses in the offender score. *See* RCW 9.94A.360(12).

of attempt, RCW 9A.28.020, Hunt's conviction for attempted grand larceny would be a class C felony, second degree theft.

Both parties acknowledge some retroactive effect to the demise of the larceny statute. They disagree over how to translate the prior larceny convictions into current classifications of felonies and misdemeanors. The State recommends comparing maximum punishments. Hunt, on the other hand, recommends comparing past convictions to the elements of the most similar present crime.

We resolve this case along different lines. First, we agree with the Court of Appeals that a crime's elements, not its maximum punishment, determine whether a crime is comparable. In *State v. Franklin*, 46 Wn. App. 84, 729 P.2d 70 (1986), *rev'd on other grounds sub nom., State v. Dunaway*, 109 Wn.2d 207, 743 P.2d 1237, 749 P.2d 160 (1987), the Court of Appeals held an Illinois conviction for aggravated battery was equivalent to class B second degree assault under Washington law. Although the maximum punishment for the Illinois conviction corresponded to a class C felony in Washington, the Court of Appeals found the elements of a crime, not its maximum punishment, were the critical factor.

> It would be inconsistent with the stated purpose of the SRA to construe the statute so that a defendant who committed a violent felony out of state avoids the imposition of a greater sentence merely because the other state imposes a shorter prison term than would Washington. The actual crime the defendant is convicted of committing and the mental state involved must be the determining factors and not the length of punishment.

*Franklin*, 46 Wn. App. at 88-89.

Furthermore, in *State v. Johnson*, 51 Wn. App. 836, 840, 759 P.2d 459 (1988), *review denied*, 111 Wn.2d 1008 the Court of Appeals reached the same conclusion regarding pre- and post-1975 crimes in Washington.

> Were we to uphold the State's position (classification should be according to the punishment as it was at the time the crime was committed), a person who had committed the crime of taking a motor vehicle in 1974 would be subject to a 10-year wash-out provision, while an individual who committed the same crime the following year would only be subject to a 5-year wash-out provision. Such a result would denigrate the

uniform treatment of defendants which is at the very heart of the SRA.

(Footnote omitted.) *Johnson*, 51 Wn. App. at 839-40. The maximum punishment on its own says little about the culpability of a particular defendant. A crime's elements, rather than its maximum punishment, reveal the nature of a felon's wrongdoing.

Having said this, we do not agree with Hunt that a change in a crime's elements requires the State to reprove past convictions under current law. The only substantial difference between grand larceny and theft is the element of dollar value. The former grand larceny statute, RCW 9.54.090, declared guilty of larceny

> [e]very person who steals or unlawfully obtains, appropriates, brings into this state, buys, sells, receives, conceals, or withholds
> . . .
>    . . . .
>    (6) [p]roperty of the value of more than seventy-five dollars, in any manner whatever . . ..

The present theft statute provides:

> A person is guilty of theft in the second degree if he commits theft of:
>
>> (a) Property or services which exceed(s) two hundred and fifty dollars in value, but does not exceed one thousand five hundred dollars in value . . ..

RCW 9A.56.040(1). The reclassification of grand larceny into first and second degree theft changed only the dollar element. All other elements remained the same.

We have held that changes in the dollar element of a crime do not require a sentencing court to reclassify prior convictions. In *State v. Frederick*, 100 Wn.2d 550, 674 P.2d 136 (1983), the court faced a problem under the habitual offender statute identical to the problem here. A jury convicted defendant Frederick of grand larceny in 1973. In 1980, he was convicted of first degree robbery, and the State charged him under the habitual offender statute, offering the larceny conviction as one of the two required prior convictions. Frederick argued that the replacement of larceny with theft changed his felony conviction to a misdemeanor.

The court discussed whether reclassification of a crime is relevant to a prior conviction but did not rule on the issue.

> Whatever the most appropriate general rule, a question which we do not decide, we hold that the 1973 changes in the grand larceny statute should be ignored. Adjustments in the value element of an offense which simply reflect inflation indicate no change in society's view of the offense's severity. *See, e.g., State ex rel. Grandstaff v. Gore*, 182 Tenn. 94, 101, 184 S.W.2d 366 (1945) ("[i]t is common knowledge that one who steals goods of the value of $60 today secures less in actual value than like goods selling at $30 in years past"). Redefinition of the value element of a crime such as larceny or theft due solely to inflation should be ignored in determining whether the conduct which led to a past conviction would constitute a felony under present law.

*Frederick*, 100 Wn.2d at 561.

■ We make the same ruling here. *Frederick* established that the elements of larceny differed from those of theft solely on the dollar value of the stolen property. Because the criminal conduct is the same, the classification should remain the same. "The classification of a prior Washington conviction is not affected by subsequent changes in the elements of the crime for which the conviction was rendered". *State v. Weiand*, 66 Wn. App. 29, 34, 831 P.2d 749 (1992). Therefore, Hunt's prior convictions do count as felonies, and the trial court entered the correct sentence.

The contrary rule, adopted by the Court of Appeals in this case, would create minitrials over prior convictions. Giving effect to changes in the elements of a crime requires the State or defendant to prove an offense under current law. The Legislature's refinement of a crime's elements does not modify the significance of a prior conviction and therefore is not a meaningful event under the SRA.

This does not entirely resolve the issue of retroactivity, however. We distinguish between a change in the elements of a crime, which does not change the status of a prior conviction, and the Legislature's reclassification of an entire crime, which does change a conviction's status. For example, in 1975 the Legislature reclassified the felony of taking a motor vehicle from a 10-year maximum penalty to a 5-year

maximum. The Court of Appeals in *State v. Johnson, supra,* gave retroactive effect to this reclassification, concluding under the SRA that "to be consistent with the purpose of the SRA to avoid diverse treatment, the present classification of crimes should be used to determine the pre-SRA classification of the crime for offender score and sentencing purposes." (Footnote omitted.) *Johnson,* 51 Wn. App. at 839.

This conclusion was incorrect for changes in a crime's elements. However, when the Legislature downgrades the status of an offense, as it did in *Johnson,* a sentencing court must give retroactive effect to the Legislature's decision. Thus, the court in *Johnson* reached the right result.

> In 1975, when it classified felonies, the Legislature is presumed to have determined that the new penalties contained therein were adequate, and with respect to those crimes for which the penalties were, in effect, reduced no purpose would be served by using the older or harsher penalties. *State v. Heath,* 85 Wn.2d 196, 198, 532 P.2d 621 (1975); *see also Addleman v. Board of Prison Terms & Paroles,* 107 Wn.2d 503, 510, 730 P.2d 1327 (1986).

*Johnson,* 51 Wn. App. at 839.

The distinction between *Johnson* and the present case[2] rests on the difference in the Legislature's actions. When the Legislature modifies the elements of a crime, it refines its description of the behavior that constitutes the crime. This does not make defendants convicted of the earlier crime any less culpable; instead, it clarifies the evidence required to prove the crime.

On the other hand, when the Legislature downgrades an entire crime, it has judged the specific criminal conduct less culpable. By reclassifying a crime without substantially altering its elements, the Legislature concludes the criminal conduct at issue deserves more lenient treatment. The reclassification of a crime is no mere refinement of elements, but rather a fundamental reappraisal of the value of punishment. It is therefore highly relevant to a sentencing judge's

---

[2]The same distinction exists between *State v. Johnson,* 51 Wn. App. 836, 759 P.2d 459 (1988) and *State v. Weiand,* 66 Wn. App. 29, 831 P.2d 749 (1992).

estimation of a defendant's overall culpability and dangerousness.

The Legislature may change the elements of a crime to such an extent as to reclassify the entire criminal conduct. In such cases, the substance of the changes should prevail over their form. However, the underlying distinction between the refinement of an existing crime and the reclassification of a crime is significant. Only when the Legislature has reassessed the culpability of criminal conduct should a sentencing court give a change in law retroactive effect under the SRA.

Thus, a change in elements does not affect prior convictions under the SRA. A downgrade in the classification of a crime does retroactively alter the status of prior convictions.

### CONCLUSION

Because grand larceny differs from current theft statutes only on the element of dollar value, Hunt's prior convictions stand as felonies. We reverse the Court of Appeals and reinstate the trial court's sentence.

UTTER, BRACHTENBACH, DOLLIVER, DURHAM, SMITH, JOHNSON, and MADSEN, JJ., concur.

ANDERSEN, C.J., concurs in the result.