**FILED**
**April 12, 2016**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 32607-1-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| KAMMIE J. JENSEN, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, J. — Kammie Jensen appeals her convictions for second degree identity theft, second degree possession of stolen property, and third degree theft. She argues the State's evidence was insufficient to sustain her convictions. In addition, she argues the trial court erred when it included two prior out-of-state convictions in her offender score. We conclude that the State presented sufficient evidence to support her convictions. However, we remand for a new sentencing hearing because the record is insufficient to determine whether her conduct underlying one of her two Oregon fraudulent use of a credit card convictions would have violated a comparable Washington statute.

## FACTS

On November 20, 2013, Lowell Compton purchased some items at a Bi-Mart store. After he paid for his items, Mr. Compton inadvertently left his wallet on the checkout counter. Shortly after Mr. Compton left the store, Jeffrey Stevens and his roommate Ms. Jensen went through the same cashier's lane that Mr. Compton had used. Mr. Stevens saw the wallet lying on the counter, looked around, and slid the wallet away from the cashier. Mr. Stevens paid the cashier and picked up Mr. Compton's wallet on his way out of the store. Mr. Stevens and Ms. Jensen then walked to Mr. Stevens' pickup truck in the parking lot.

Once in the pickup truck, Mr. Stevens told Ms. Jensen he took the wallet and put the wallet on the dash. Mr. Stevens and Ms. Jensen then drove to a local skate park. While Mr. Stevens and Ms. Jensen sat in the pickup truck at the skate park, Mr. Stevens took the wallet off the dash and laid its contents on the seat between himself and Ms. Jensen. The wallet contained $22.00, a driver's license, a debit card, a small piece of paper with the debit card's personal identification number (PIN) written on it, a health insurance card, and several other cards. Ms. Jensen watched Mr. Stevens but did not dig through the wallet or handle its contents.

2

Mr. Stevens and Ms. Jensen drove to Walmart. Before walking into the store, the two discussed using the debit card Mr. Stevens had found in the wallet to purchase items. Mr. Stevens and Ms. Jensen then walked into Walmart. In order to see if the debit card worked, the two went through the register together and purchased soda, a candy bar, a Frappuccino, bronzer, hair color, and fragrance. Mr. Stevens ran the card as debit, entered the PIN, and withdrew $60.00 cash back for a total purchase of $135.63. After this test run of the card the two briefly returned to Mr. Stevens' truck.

Ms. Jensen left Mr. Stevens' truck and went back into the Walmart. Twenty minutes later, Mr. Stevens followed. Roughly 90 minutes later, Ms. Jensen went through the check-out lane. The cashier rang up her items, which totaled $334.16. Ms. Jensen swiped Mr. Compton's credit card, typed in the PIN, and attempted to get $100.00 cash back. The register declined the transaction. Ms. Jensen swiped the card again and typed in the PIN. The register declined the transaction again. Ms. Jensen then ran the card as credit, and the card worked. Ms. Jensen scribbled on the register's signature pad. Ms. Jensen then left the Walmart with her items and unloaded her shopping cart into the pickup truck. Ms. Jensen then took her shopping cart back inside and remained there for several minutes.

Several minutes later, Mr. Stevens used Mr. Compton's debit card to purchase $302.51 worth of items at a different register. Mr. Stevens tried to run the card as debit two times, and the register declined both transactions. Mr. Stevens then ran the card as credit, and the card worked. Mr. Stevens then left the Walmart, and he and Ms. Jensen drove away in his pickup truck. They later dumped the debit card in a dumpster in Pullman, Washington.

Mr. Compton reported the card stolen and his bank shut the card off. Mr. Compton also called the police. Detective Brock Germer called Ms. Jensen and asked her to come to the police department for an interview. During the interview, Ms. Jensen stated that Mr. Stevens let her use his debit card to purchase items at Walmart because Mr. Stevens owed her money, and that Mr. Stevens had instructed her to scribble on the credit card receipt when she paid. Ms. Jensen denied knowing the card was stolen.

The State charged Ms. Jensen with second degree identity theft, second degree possession of stolen property, and third degree theft.[1] At trial, Ms. Jensen's defense was that she did not know the debit card was stolen. Mr. Stevens testified for the State. He testified that he told Ms. Jensen he had stolen the wallet, that Ms. Jensen watched him go through the wallet's contents at the skate park, and that the two discussed using the card

---

[1] Before trial, Mr. Stevens pleaded guilty to second degree theft, third degree theft,

4

to buy items in Walmart. Mr. Stevens testified that he never owed Ms. Jensen any money nor did he lend Ms. Jensen his card.

The jury convicted Ms. Jensen on all three counts. At sentencing, the State argued that Ms. Jensen's offender score was 6. Ms. Jensen agreed that 4 of the 6 points in her offender score were appropriate. However, Ms. Jensen asked the trial court not to include her two prior Oregon convictions for fraudulent use of a credit card under ORS 165.055, arguing that ORS 165.055 is broader than comparable Washington felonies. The State presented certified judgments from both of Ms. Jensen's prior fraudulent use of a credit card convictions, but presented the complaint from only one of those cases. The trial court agreed with the State's calculation of Ms. Jensen's offender score based on its review of the certified judgments. The trial court did not conduct a comparability analysis. The trial court sentenced Ms. Jensen to 20 months' incarceration. This appeal followed.

## ANALYSIS

1.    *Whether the State's evidence was sufficient to support the convictions.*

In a criminal case, the State must provide sufficient evidence to prove each element of the charged offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S.

---

and second degree identity theft.

307, 316, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). When a defendant challenges the sufficiency of the evidence, the proper inquiry is "whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "[A]ll reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant." *Id.* Furthermore, "[a] claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *Id.* In a challenge to the sufficiency of the evidence, circumstantial evidence and direct evidence carry equal weight. *State v. Goodman*, 150 Wn.2d 774, 781, 83 P.3d 410 (2004).

A person commits second degree identity theft when that person *knowingly* obtains, possesses, transfers, or uses a means of identification or financial information with the *intent* to commit or to aid and abet any crime. RCW 9.35.020(1), (3). A person commits second degree possession of stolen property when that person *knowingly* receives, retains, possesses, conceals, or disposes of stolen property *knowing* that the property has been stolen. RCW 9A.56.140(1); RCW 9A.56.160. Finally, a person commits third degree theft when that person wrongfully obtains or exerts unauthorized

6

control over someone else's property, and *intends* to deprive the other person of his or her property. RCW 9A.56.020(1)(a); RCW 9A.56.050.

"Intent" means acting "with the objective or purpose to accomplish a result which constitutes a crime." RCW 9A.08.010(1)(a). "Intent is rarely provable by direct evidence, but may be gathered, nevertheless, from all of the circumstances surrounding the event." *State v. Gallo*, 20 Wn. App. 717, 729, 582 P.2d 558 (1978). Criminal intent may be inferred "from conduct that plainly indicates such intent as a matter of logical probability." *State v. Abuan*, 161 Wn. App. 135, 155, 257 P.3d 1 (2011). Similarly, a person acts knowingly when "he or she is aware of a fact, facts, or circumstances or result" that a criminal statute describes, or "he or she has information which would lead a reasonable person in the same situation to believe that [those] facts exist." RCW 9A.08.010(1)(b)(i)-(ii). The State may prove the defendant's guilt through an accomplice's testimony, and a cautionary instruction is not required when the accomplice's testimony is corroborated. *See State v. Jennings*, 35 Wn. App. 216, 221, 666 P.2d 381 (1983).

Ms. Jensen only contested the mens rea elements of the three charges at trial. Likewise, on appeal, she only challenges the sufficiency of the State's evidence insofar as the jury found she acted intentionally or knowingly. In this case, the State presented both

7

direct and circumstantial evidence that Ms. Jensen knew Mr. Compton's credit card was stolen, that she knowingly possessed it, and that she intended to deprive Mr. Compton of the funds in his bank account.

There was direct evidence of Ms. Jensen's guilt. While Ms. Jensen was not aware that Mr. Stevens took the wallet while the two were in the Bi-Mart, Mr. Stevens testified that he told her when they got to his truck. Mr. Stevens testified that Ms. Jensen watched him go through the wallet, and watched him lay its contents on the seat between them in the truck. Mr. Stevens also testified that he and Ms. Jensen discussed using the card to purchase items at Walmart before they entered the store. Finally, Mr. Stevens testified he never told Ms. Jensen it was his credit card, never owed Ms. Jensen any money, and never authorized Ms. Jensen to use the card to repay a debt. Although Ms. Jensen denied knowing that the card was stolen in her interview, this court assumes the truth of the State's evidence on review.

In addition to direct evidence, the State also introduced circumstantial evidence of Ms. Jensen's criminal intent, which carries the same weight as direct evidence.[2] Ms. Jensen told Detective Germer that she assumed the debit card belonged to Mr. Stevens,

---

[2] This circumstantial evidence also corroborated Mr. Stevens' accomplice testimony, which made a cautionary instruction on accomplice testimony unnecessary. *See Jennings*, 35 Wn. App. at 221.

but Mr. Compton's name was written across the front. Further, Ms. Jensen tried to run

Mr. Compton's card as debit twice and get cash back, but the register declined the card

both times. Rather than asking why the PIN or the cash advance was rejected, Ms. Jensen

ran the card as credit. Then, rather than signing her own name or Mr. Stevens' name, Ms.

Jensen scribbled on the signature pad, directly underneath the name "Lowell Compton."

Ex. P4. Assuming the truth of the State's evidence, and drawing all reasonable inferences

from the evidence in favor of the State, the foregoing evidence was sufficient to prove

that Ms. Jensen knowingly possessed Mr. Compton's debit card, knew that it was stolen,

and intended to deprive Mr. Compton of the funds in his bank account as required by

RCW 9.35.020(3), RCW 9A.56.140(1), and RCW 9A.56.020(1)(a).

2.    *Whether the superior court erred by including Ms. Jensen's two Oregon
      convictions for fraudulent use of a credit card in her offender score*

   A.    Standard of review and rules of law

This court reviews a superior court's offender score calculation and the trial

court's classification of an out-of-state conviction de novo. *State v. Tili*, 148 Wn.2d 350,

358, 60 P.3d 1192 (2003); *State v. Labarbera*, 128 Wn. App. 343, 348, 115 P.3d 1038

(2005). When sentencing a criminal defendant, a trial court determines the standard

sentencing range by finding the intersection of the current offense's "seriousness level"

and the defendant's offender score on the sentencing grid. RCW 9.94A.530(1). The

9

offender score measures a defendant's criminal history and is calculated by totaling the

defendant's prior convictions for felonies and certain juvenile offenses.[3] *State v. Ford*,

137 Wn.2d 472, 479, 973 P.2d 452 (1999). The existence of a prior conviction is a

question of fact, and the State must prove the existence of these prior convictions by a

preponderance of the evidence. *Id.* at 479-80; *In re Pers. Restraint of Adolph*, 170 Wn.2d

556, 566, 243 P.3d 540 (2010).

If the convictions are from another jurisdiction, the State also must prove that the

conviction would be a felony under Washington law. *Ford*, 137 Wn.2d at 480. To

determine whether an out-of-state conviction counts, the sentencing court compares the

elements of the out-of-state offense with the elements of potentially comparable

Washington crimes and makes a factual determination as to whether the crimes are

comparable. *Id.* at 479; *State v. Morley*, 134 Wn.2d 588, 601, 952 P.2d 167 (1998).

"[T]he elements of the out-of-state crime must be compared to the elements of

Washington criminal statutes in effect when the foreign crime was committed." *Morley*,

134 Wn.2d at 606. If the two crimes are comparable, the out-of-state conviction can be

---

[3] Prior misdemeanors are generally not included in the offender score. *State v. Wiley*, 124 Wn.2d 679, 683, 880 P.2d 983 (1994). However, an out-of-state misdemeanor conviction can be included in the offender score if it is comparable to a Washington felony. *See State v. Bush*, 102 Wn. App. 372, 383-84, 9 P.3d 219 (2000) (affirming classification of Kansas misdemeanor as class C felony under Washington law).

10

included in the offender score. *State v. Thiefault*, 160 Wn.2d 409, 415, 158 P.3d 580 (2007).

Washington has a two-part analysis for determining whether an out-of-state conviction is comparable to a Washington conviction. *Id.* at 414-15. First, the trial court determines whether the offenses are *legally* comparable—whether the elements of the out-of-state offense are substantially similar to the elements of the Washington offense. *Id.* at 415. If the elements of the out-of-state offense are broader than the elements of the Washington offense, they are not legally comparable. *In re Pers. Restraint of Lavery*, 154 Wn.2d 249, 258, 111 P.3d 837 (2005).

Second, even if the offenses are not legally comparable, the sentencing court can still include the out-of-state conviction in the offender score if the offense is *factually* comparable. *Id.* at 255. Determining factual comparability involves analyzing whether the defendant's conduct underlying the out-of-state conviction would have violated the comparable Washington statute. *Thiefault*, 160 Wn.2d at 415.

If an out-of-state conviction involves an offense that is neither legally nor factually comparable to a Washington offense, the sentencing court may not include the conviction in the defendant's offender score. *Id.*

11

No. 32607-1-III
*State v. Jensen*

B.      Legal comparability of ORS 165.055 to RCW 9A.56.290

The State argues that ORS 165.055 is legally comparable to Washington's

unlawful factoring of transactions statute, specifically RCW 9A.56.290(1)(a), which

makes it a felony for a person to

> [u]se[] a scanning device to access, read, obtain, memorize, or store,
> temporarily or permanently, information encoded on a payment card
> without the permission of the authorized user of the payment card or with
> the intent to defraud the authorized user, another person, or a financial
> institution.

Br. of Resp't at 15. In their briefs, both parties forget that "the elements of the out-of-

state crime must be compared to the elements of Washington criminal statutes in effect

when the foreign crime was committed." *Morley*, 134 Wn.2d at 606. Ms. Jensen has two

convictions for fraudulent use of a credit card under ORS 165.055 for conduct that

occurred in 2002.[4] The legislature amended RCW 9A.56.290 in 2003. LAWS OF 2003,

ch. 52, § 2. The 2003 amendments added both subsection (1)(a) and subsection (1)(b).

LAWS OF 2003, ch. 52, § 2. Prior to the 2003 amendments, RCW 9A.56.290 read:

---

[4] The one complaint the State provided, Oregon Case No. 020051 CM, says that
Ms. Jensen committed that particular fraudulent use of a credit card offense on
August 22, 2002. The State did not provide the complaint from Ms. Jensen's second
fraudulent use of a credit card conviction, Oregon Case No. 020050 CM. However, Ms.
Jensen certainly committed that crime in 2002—the State lists the date of that crime in its
brief as May 18, 2002, the Oregon trial court held the sentencing hearing on May 29,
2002, and the Oregon trial court filed both judgments on June 21, 2002.

12

(1) A person commits the crime of unlawful factoring of a credit card transaction if the person, with intent to commit fraud or theft against a cardholder, credit card issuer, or financial institution, causes any such party or parties to suffer actual monetary damages that in the aggregate exceed one thousand dollars, by:

(a) Presenting to or depositing with, or causing another to present to or deposit with, a financial institution for payment a credit card transaction record that is not the result of a credit card transaction between the cardholder and the person;

(b) Employing, soliciting, or otherwise causing a merchant or an employee, representative, or agent of a merchant to present to or deposit with a financial institution for payment a credit card transaction record that is not the result of a credit card transaction between the cardholder and the merchant; or

(c) Employing, soliciting, or otherwise causing another to become a merchant for purposes of engaging in conduct made unlawful by this section.

. . . .

(3) Unlawful factoring of a credit card transaction is a class C felony.

Former RCW 9A.56.290 (1993); *see also* LAWS OF 1993, ch. 484, § 2.

i.    *Ordinary credit card fraud v. factoring credit card transactions*

Before analyzing whether the elements of ORS 165.055 are substantially similar to

the elements of former RCW 9A.56.290, it is important to note that credit card fraud and

factoring of credit card transactions are very different crimes. Washington prosecutes a

person who takes another person's credit card and makes unauthorized purchases under

its statutes prohibiting possessing stolen property, theft, and identity theft. *See, e.g., State*

*v. Leyda*, 122 Wn. App. 633, 635, 94 P.3d 397 (2004), *rev'd*, 157 Wn.2d 335, 138 P.3d

13

610 (2006). In contrast, the unlawful factoring statute deals with merchants laundering money from illegitimate businesses to banks. The Washington Legislature summarized the crime of unlawful factoring when it first introduced the bill in 1993:

> A business that wishes to accept credit cards from its customers must first enter into a merchant agreement with a financial institution. Credit card factoring occurs when a business that has a merchant agreement (the factor) processes the credit card transactions of a second business that has been unable or unwilling to obtain its own merchant agreement. In return, the second business pays a fee to the factor, which often is based on a percentage of the credit sales processed.
>
> It has been reported that certain "disreputable" operators use factoring in connection with schemes to defraud or deceive consumers. These deceptive transactions can produce significant losses to consumers who do not receive bargained-for products or services, and to financial institutions who must reimburse injured consumers.
>
> It has been suggested that criminalizing factoring used to facilitate unfair or deceptive trade practices would help to reduce the operations of "disreputable" businesses in this state.
>
> . . . .
>
> This bill will discourage "fly-by-night" businesses from committing consumer fraud in Washington and will help prevent losses to consumers and banks.

S.B. REP. ON S.B. 5704, 53rd Leg., Reg. Sess. (Wash. 1993). In other words, these factoring statutes are intended to prohibit a merchant from defrauding a bank by passing off the credit card transactions of an illegitimate business as his or her own sales, when the merchant knows otherwise.

14

Within former RCW 9A.56.290, subsection (1)(a) was targeted at a factoring merchant who presents the transaction to the bank. This subsection focused on whether the transaction really was between that merchant and the cardholder. In other words, it prohibited the merchant from passing off someone else's sales as his or her own. Former subsections (1)(b) and (1)(c) targeted persons who enlisted the merchant's help in laundering transactions. In other words, those subsections made it unlawful to recruit someone to open a merchant account at a bank for the purpose of laundering credit card transactions through that account. Again, this is consistent with the understanding that this statute was intended to outlaw the practice of laundering credit card transactions.

      ii.    *Whether the elements of ORS 165.055 and former RCW 9A.56.290 were substantially similar at the time Ms. Jensen committed the offenses*

ORS 165.055 provides that

[a] person commits the crime of fraudulent use of a credit card if, with intent to injure or defraud, the person uses a credit card for the purpose of obtaining property or services with knowledge that:
    (a) The card is stolen or forged;
    (b) The card has been revoked or canceled; or
    (c) For any other reason the use of the card is unauthorized by either the issuer or the person to whom the credit card is issued.
    . . . .
    (4) Fraudulent use of a credit card is:
    (a) A Class A misdemeanor if the aggregate total amount of property or services the person obtains or attempts to obtain is less than $1,000.

15

> (b) A Class C felony if the aggregate total amount of property or
> services the person obtains or attempts to obtain is $1,000 or more.

Thus, ORS 165.055's elements are: (1) fraudulent intent, (2) using the credit card

to obtain property or services, (3) knowledge that the card is stolen, forged, revoked,

canceled, or that the card's use was unauthorized for any other reason. Conversely,

former RCW 9A.56.290's elements are: (1) fraudulent intent, (2) causing the victim to

suffer actual monetary damages that exceeds $1,000, (3) presenting or depositing a credit

card transaction record to a financial institution that is not the result of a credit card

transaction between the cardholder and the merchant.

Here, the elements of these two statutes are not substantially similar. First, former

RCW 9A.56.290 requires over $1,000 in monetary damages. While ORS 165.055 makes

it a felony to fraudulently obtain over $1,000, a person can still be convicted of a

misdemeanor under ORS 165.055 if that person obtains less than $1,000.[5] Second,

former RCW 9A.56.290 requires the person to present a credit card transaction

record to a financial institution, whereas ORS 165.055 does not. For these reasons, it is

possible for Ms. Jensen to have violated ORS 165.055 without necessarily meeting the

---

[5] The complaint the State submitted from Oregon Case No. 020051 CM indicates that this fraudulent use of a credit card conviction was a misdemeanor. The judgment for the other conviction included a compensatory fine of $600, which would have made it a misdemeanor as well if this were the actual amount Ms. Jensen fraudulently obtained.

16

elements of former RCW 9A.56.290. ORS 165.055 is therefore broader than former RCW 9A.56.290. The two statutes are not legally comparable.

    C.    Whether Ms. Jensen's conduct was factually comparable to a Washington felony

When conducting a factual comparability analysis, the trial court can consider only facts that were proved to a trier of fact beyond a reasonable doubt or that the defendant admitted or stipulated to. *State v. Thomas*, 135 Wn. App. 474, 482, 144 P.3d 1178 (2006).

Here, Ms. Jensen pleaded guilty to each Oregon fraudulent use of a credit card offense. We may therefore consider the elements listed in the complaint and the two judgments to determine whether Ms. Jensen's conduct would have been a felony in Washington.

The Oregon complaint in Case No. 020051 CM alleged that Ms. Jensen,

> on or about 08/22/2001, in the County of Hood River and State of Oregon, did unlawfully, with intent to injure and defraud, use a credit card, to-wit: a Texaco credit card, for the purposes of obtaining money, with the knowledge that her use of the card was not authorized by Carlos Linares, the holder of the card.

Clerk's Papers at 124. The judgment establishes that Ms. Jensen pleaded guilty to and was convicted of the charges as alleged in this complaint. The State argues that these facts are factually comparable to Washington's second degree identity theft offense, a

17

felony, which provides that "[n]o person may knowingly obtain, possess, use, or transfer a means of identification or financial information of another person, living or dead, with the intent to commit, or to aid or abet, any crime." RCW 9.35.020(1). The State is correct. The facts with which the state of Oregon charged Ms. Jensen in the complaint satisfy the elements of second degree identity theft in Washington: (1) Ms. Jensen knowingly used the card, (2) she knew the cardholder was Carlos Linares, and that she was not authorized to use the card, and (3) she acted with intent to injure and defraud. Therefore, Ms. Jensen's Oregon fraudulent use of a credit card conviction that is accompanied by the complaint is factually comparable to a Washington felony.

The State acknowledges it did not provide a complaint for the Oregon fraudulent use of a credit card conviction in Oregon Case No. 020050 CM. The State argues this court can deduce that Ms. Jensen's conduct would have been factually comparable to some Washington felony regardless of how she violated ORS 165.055—if she used a stolen or forged card under ORS 165.055(1)(a), that could be either unlawful factoring under RCW 9A.56.290(1)(a), second degree possession of stolen property under RCW 9A.56.160(1)(a), or forgery under RCW 9A.60.020(1).

However, the State only lists Washington felonies that would be factually comparable if Ms. Jensen had specifically violated ORS 165.055(1)(a)—that the card was

18

stolen or forged. But the June 21, 2002 Oregon judgment does not specify that Ms. Jensen committed the offense under subsection (1)(a). Ms. Jensen could have violated ORS 165.055(1)(b), which prohibits using a credit card that has been revoked or canceled, or ORS 165.055(1)(c), which prohibits using a card that is unauthorized "[f]or any other reason." These subsections do not require the card to be stolen, forged, or even belong to another person. *See State v. Franke*, 13 Or. App. 278, 282, 508 P.2d 454 (1973) ("[I]t is clear that a person can commit the crime of fraudulent use of a credit card without committing the crime of forgery."). For example, a person could violate either of these subsections by using his or her own credit card that has been revoked. Assuming that Ms. Jensen stole or forged the credit card when she committed the offense, like the State asks this court to do, would be assuming evidence that was not presented in the foreign proceeding and would violate *Apprendi*.[6] *See Lavery*, 154 Wn.2d at 256. Therefore, because the judgment from Ms. Jensen's Oregon conviction under Case No. 020050 CM fails to establish that she used a stolen or forged credit card, the State failed to prove Ms. Jensen's conduct was factually comparable to a Washington felony.[7]

___

[6] *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000).

[7] The judgment for Oregon Case No. 020050 CM ordered Ms. Jensen to pay a $600 compensatory fine to Peggy's Roost Tavern. In a footnote, the State argues that "[a]ssuming this is the amount she charged to the card, this would have constituted Theft

D.    Remedy on remand

Under *State v. Jones*, 182 Wn.2d 1, 10-11, 338 P.3d 278 (2014), a sentencing court

is permitted to consider new, permissible evidence on remand. We therefore remand for a

resentencing hearing where the State will have the opportunity to present "all relevant

evidence regarding criminal history, including criminal history not previously presented"

relating to Oregon Case No. 020050 CM, in order to establish factual comparability. *See*

RCW 9.94A.530(2).

## CONCLUSION

We affirm the conviction, affirm that Ms. Jensen's conviction in Oregon Case No.

020051 CM is factually comparable to a Washington felony, but remand for a new

sentencing hearing to determine whether Ms. Jensen's conviction in Oregon Case No.

020050 CM is factually comparable to a Washington felony.

---

in the Second Degree under the version of the theft statute then in effect 2001 [sic]." Br.
of Resp't at 19 n.4. Without a complaint, there are simply no facts supporting this
assumption—the $600 could have been aggregated from the other two counts in the
complaint, one of which, forgery, was already included in Ms. Jensen's offender score.
Without examination of the actual complaint, it would violate *Apprendi* to assume this

No. 32607-1-III
*State v. Jensen*

Affirmed in part, remanded.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Lawrence-Berrey, A.C.J.

WE CONCUR:

_____       _____
Siddoway, J.                                              Korsmo, J.

---

$600 fine is factually comparable to a second degree theft conviction.

21