# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 54353-2-II |
| Respondent, | |
| v. | |
| CHEYENNE RACHELL LARSEN, | UNPUBLISHED OPINION |
| Appellant. | |

CRUSER, J. – Following her termination from drug court, the trial court held a stipulated facts bench trial and found Cheyenne Rachell Larsen guilty of two counts of second degree unlawful possession of a firearm, two counts of unlawful possession of a controlled substance with intent to deliver, and one count of felony bail jumping.[1] Larsen appeals her convictions and her sentences.

---

[1] The trial court also found Larsen guilty of first degree driving with a revoked or suspended license and no ignition interlock device, but she does not challenge these gross misdemeanor convictions.

As to her convictions, Larsen argues that (1) one of the two second degree unlawful possession of a firearm convictions, count 4, is not supported by substantial evidence,[2] (2) the two unlawful possession of a controlled substance with intent to deliver convictions violate the prohibition against double jeopardy, and (3) the felony bail jumping conviction must be vacated because the legislature recently downgraded similar bail jumping offenses to misdemeanors. The State concedes that the evidence was insufficient to support the second degree unlawful possession of firearm conviction under count 4.

As to her sentences, Larsen argues that (4) she must be resentenced because her offender scores for each offense contain a 2012 unlawful possession of a controlled substance conviction that is no longer a valid conviction under *State v. Blake*,[3] (5) her trial counsel provided ineffective assistance at sentencing by failing to argue that the two drug offenses were same criminal conduct, and (6) the trial court erred by requiring her to pay community custody supervision fees. The State concedes that the 2012 unlawful possession of a controlled substance conviction is invalid under *Blake* and that Larsen is entitled to resentencing.

We accept the State's concessions. Accordingly, we reverse the conviction on count 4 and remand to the trial court to vacate that conviction and dismiss the charge with prejudice, to strike

---

[2] Larsen also argues that (1) the trial court erred when it allowed the State to orally amend the two second degree unlawful possession of a firearm charges on the day of trial, (2) the trial court erred when it allowed the untimely amendment of second degree unlawful possession of a firearm charges, (3) the two second unlawful possession of a firearm convictions violate the prohibition against double jeopardy, and (4) the trial court failed to enter findings of fact that were sufficient to allow review of the second degree unlawful possession of a firearm convictions. Because we hold that the evidence was insufficient to support one of the second degree unlawful possession of a firearm convictions, we do not reach these additional issues.

[3] 197 Wn.2d 170, 481 P.3d 521 (2021).

the 2012 unlawful possession of a controlled substance conviction from Larsen's offender score, and to resentence Larsen. At resentencing, Larsen can present her same criminal conduct argument and the trial court can reconsider whether to impose the community custody supervision fees. We otherwise affirm.

FACTS

I. INVESTIGATION AND ARREST

During a narcotics investigation, a suspect advised law enforcement officers that "he had obtained narcotics from [Larsen]" that morning and that she had "show[n] him a large amount of . . . heroin." Clerk's Papers (CP) at 2. Based on information provided by the suspect, law enforcement obtained a warrant to search Larsen's residence.

During the search, law enforcement found "a large amount of what appeared to be heroin, a large amount of cash on [Larsen's] bed," and a stolen handgun on a couch in Larsen's room. *Id.* at 3. A further search of the room disclosed a shotgun under Larsen's bed, more heroin, more money, methamphetamine, drug packaging materials, and a digital scale. Testing later confirmed that the substances found in Larsen's room were heroin and methamphetamine. The officers later detained Jason Jackson, who had fled out of the back door in Larsen's room when the officers entered the residence. When he was apprehended, Jackson was wearing a holster.

The officers also arrested Larsen. After advising her of her *Miranda*[4] rights, Larsen initially told the officers that Jackson had taken over the house and that all of the drugs were his. But she

---

[4] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

later claimed that "the drugs were hers too" and admitted that she helped Jackson facilitate his drug sales.[5] *Id.* at 45. She also stated that the handgun found in her room belonged to Jackson.

## II. CHARGES, AMENDED CHARGES, AND DRUG COURT CONTRACT

The State initially charged Larsen with unlawful possession of methamphetamine with intent to deliver (count 1), unlawful possession of heroin with intent to deliver (count 2), first degree unlawful possession of a firearm based on possession of the shotgun (count 3), first degree unlawful possession of a firearm based on possession of the handgun (count 4), and possession of a stolen firearm (count 5). After Larsen failed to appear at an April 9, 2019 court hearing, the State filed a first and second amended information that added a felony bail jumping charge (count 6) to the original charges.

On October 28, the State filed a third amended information, changing the two second degree unlawful possession of a firearm offenses from class B to class C felonies. This amended information also amended count 4 to state that the firearm in question was a shotgun rather than a handgun. The next day, the State filed a fourth amended information, adding two gross misdemeanor offenses. The fourth amended information continued to allege that both second degree unlawful possession of a firearm charges, counts 3 and 4, were based on the possession of a shotgun.

Also on October 29, Larsen entered into a drug court contract. As part of this contract, Larsen agreed that if she was terminated from the program the trial court could "determine the issue of guilt on the pending charge(s) solely upon the law enforcement/investigative agency reports or declarations, witness statements, field test results, lab test results, or other expert testing

---

[5] Larsen stated that "she worked with Jackson and helped middle deals." CP at 3.

or examinations . . . , which constitute the basis for the prosecution of the pending charge(s)." *Id.* at 20. She also "agree[d] and stipulate[d] that the facts presented by such reports, declarations, statements, and/or expert examinations are sufficient for the Court to find [her] guilty of the pending charge(s)." *Id.*

### III. STIPULATED FACTS BENCH TRIAL AND ORAL AMENDMENT OF INFORMATION

Just over two months later, the trial court terminated Larsen from drug court. The case proceeded to a stipulated facts bench trial.

At the start of the bench trial, the State advised the trial court that it would not be moving forward on the possession of a stolen firearm charge. The court dismissed the possession of a stolen firearm charge.

During its oral ruling, the trial court noticed that both second degree unlawful possession of a firearm charges, counts 3 and 4, alleged that the firearm at issue was a shotgun. The State made an oral motion to amend count 4 to state that the relevant firearm for that charge was a handgun, not a shotgun. Defense counsel did not object to the amendment. Instead, defense counsel argued that the trial court should find Larsen not guilty on count 4 because "someone else has claimed possession of that [firearm] by pleading guilty to possessing it as a stolen firearm." Report of Proceedings (RP) at 98.

Based on the police reports and statements, the trial court found Larsen guilty of unlawful possession of methamphetamine with intent to deliver; unlawful possession of heroin with intent to deliver; second degree unlawful possession of a firearm, a shotgun; second degree unlawful possession of a firearm, a handgun; felony bail jumping; and the two gross misdemeanors. The

trial court subsequently entered written findings of fact and conclusions of law reflecting this verdict.

## IV. SENTENCING

At sentencing, Larsen argued for a prison-based Drug Offender Sentencing Alternative. Larsen's counsel did not argue that the two unlawful possession of a controlled substance with intent to deliver convictions were same criminal conduct for the purpose of sentencing.

The trial court imposed sentences based on offender scores of eight points for each felony offense. Larsen's criminal history included a 2012 Thurston County conviction for unlawful possession of a controlled substance. The trial court did not find that any of the prior or current convictions were same criminal conduct.

Although the judgment and sentence does not contain any findings regarding Larsen's ability to pay any legal financial obligations (LFOs), the only LFO the trial court imposed was a mandatory $500 victim assessment. But in section 4.2 of the judgment and sentence, which addresses community custody, the trial court ordered Larsen to "pay supervision fees as determined by DOC." CP at 66.

The trial court entered the judgment and sentence on February 6, 2020. Larsen appeals her felony convictions and her sentences.

## ANALYSIS

### I. INSUFFICIENT EVIDENCE OF SECOND DEGREE UNLAWFUL POSSESSION OF A HANDGUN

Larsen first argues that the second degree unlawful possession of a firearm conviction alleging that she unlawfully possessed a handgun, count 4, is not supported by substantial evidence. The State concedes that the evidence is insufficient to support the second degree

unlawful possession of a firearm conviction based on possession of the handgun. We accept the State's concession.

To find Larsen guilty of unlawful possession of the handgun, the State had to prove that Larsen had actual or constructive possession of the handgun. RCW 9.41.040(2)(a); *State v. Reichert*, 158 Wn. App. 374, 390, 242 P.3d 44 (2010). Constructive possession occurs when a person has "dominion and control" over an item. *Reichert*, Wn. App. at 390. Although the defendant's ability to immediately take actual possession of an item can show dominion and control, mere proximity to the item by itself is insufficient. *State v. Jones*, 146 Wn.2d 328, 333, 45 P.3d 1062 (2002).

Despite the evidence that the handgun was found in Larsen's room, there was no evidence of actual or constructive possession. At most, taking the evidence in the light most favorable to the State,[6] the evidence showed that Larsen may have been in proximity to the handgun.

Accordingly, we accept the State's concession as to count 4 and that conviction is reversed. We remand this matter back to the trial court to vacate the conviction, to dismiss count 4 with prejudice, and to resentence Larsen. *State v. Smith*, 155 Wn.2d 496, 505, 120 P.3d 559 (2005).

---

[6] *State v. Drum*, 168 Wn.2d 23, 35, 225 P.3d 237 (2010).

## II. Unlawful Possession of a Controlled Substance with Intent to Deliver Convictions Do Not Implicate Double Jeopardy

Larson next argues that the two unlawful possession of a controlled substance with intent to deliver convictions violate the prohibition against double jeopardy. We disagree.

We "review[ ] double jeopardy claims de novo." *State v. Fuller*, 185 Wn.2d 30, 34, 367 P.3d 1057 (2016).

Citing *State v. Adel*, 136 Wn.2d 629, 634-35, 965 P.2d 1072 (1998), Larsen argues that because she was charged with violating the same statute multiple times, the multiple drug convictions violate the prohibition against double jeopardy unless each conviction is based on a separate unit of prosecution. But the unit of prosecution test used in *Adel* applies when the defendant is charged with multiple violations of the same statute. 136 Wn.2d at 633-35. Here, the possession with intent to deliver methamphetamine charge was under RCW 69.50.401(2)(b), and the possession with intent to deliver heroin charge was under RCW 69.50.401(2)(a). Because Larsen was convicted under two separate statutory provisions, the unit of prosecution test does not apply and this argument fails.[7] *State v. O'Neal*, 126 Wn. App. 395, 416-17, 109 P.3d 429 (2005) (applying same evidence test to determine whether convictions under two different subsections of former RCW 69.50.401(a)(1) (2000) implicated double jeopardy), *aff'd*, 159 Wn.2d 500, 150 P.3d 1121 (2007).

---

[7] Larsen does not argue that the two convictions constitute double jeopardy under the same evidence test.

### III. BAIL JUMPING CONVICTION

Larsen further argues that we should vacate her bail jumping conviction in light of the legislature's 2020 amendments to the bail jumping statute. We recently rejected this same argument in *State v. Brake*, 15 Wn. App. 2d 740, 743, 476 P.3d 1094 (2020).

Larsen committed her bail jumping offense on April 9, 2019, when she failed to appear for a court hearing. At that time, former RCW 9A.76.170 (2001) stated, "Any person having been released by court order or admitted to bail with knowledge of the requirement of a subsequent personal appearance before any court of this state, . . . and who fails to appear . . . is guilty of bail jumping."

On March 7, 2020, a month after the trial court entered Larsen's judgment and sentence, the legislature amended former RCW 9A.76.170. LAWS OF ch. 19, §§ 1, 2. The amendments took effect on June 11, 2020. LAWS OF 2020, ch. 19, §§ 1, 2.

Under the law in effect when Larsen failed to appear, felony bail jumping required only failure to appear "before any court of this state." Former RCW 9A.76.170(1), (3). Under the 2020 law, felony bail jumping requires a person to "fail[ ] to appear for trial." LAWS OF 2020, ch. 19, § 1(1)(a). The legislature also created a separate section for failure to appear for a court date other than trial and downgraded that crime to either a gross misdemeanor or no crime at all. LAWS OF 2020, ch. 19, § 2. As part of the new crime of failure to appear or surrender for a non-trial court date, the State must either prove that the defendant did not appear and did not move to quash the warrant within 30 days of its issuance or that the defendant had a prior warrant issued for failing to appear in the case. RCW 9A.76.190(1)(b).

In *Brake*, we held that because there is no clear legislative intent that the 2020 amendments to former RCW 9A.76.170 apply retroactively, "the version of the statute in effect on the date of . . . [the] offense is the one that applies." 15 Wn. App. 2d at 747. We have reviewed Larsen's arguments and cannot distinguish them in any meaningful way from those raised and addressed in *Brake*.[8] Accordingly, based on *Brake*, we conclude former RCW 9A.76.170 applies to Larsen's bail jumping offense and this argument fails.

## IV. SENTENCING ISSUES

Larsen further argues that her offender scores for each felony conviction include a prior unlawful possession of a controlled substance conviction that has been invalidated by *Blake* and that she is entitled to resentencing under an offender scores that do not contain this prior offense. The State concedes this issue and agrees that resentencing is appropriate.

We accept the State's concession. At the resentencing hearing, the parties should ensure that Larsen's offender scored no longer includes any offenses invalidated by *Blake*.

Finally, Larsen argues that (1) her trial counsel's representation was ineffective because counsel failed to argue that the two unlawful possession with intent to deliver convictions were same criminal conduct for purposes of sentencing and (2) the trial court erred when it imposed the

---

[8] We acknowledge that Larsen cites several cases that are not cited in the *Brake* briefing, but none of these cases establish that the amendment to the bail jumping statute applies to Larsen's conviction because they do not address legislative amendments that downgrade a substantive offense. *See State v. Ross*, 152 Wn.2d 220, 95 P.3d 1225 (2004) (addressing changes to sentencing classifications and offender scores under the Sentencing Reform Act (SRA)); *In re Pers. Restraint of Matteson*, 142 Wn.2d 298, 307, 12 P.3d 585 (2000) (addressing amendments to statutes related to the Department of Corrections' authority to transfer prisoners); *State v. Wiley*, 124 Wn.2d 679, 880 P.2d 983 (1994) (addressing changes to sentencing classifications under the SRA); *State v. K.J.H. (Huxel)*, No. 36191-8-III (Wash. Ct. App. Mar. 2, 2021) https://www.courts.wa.gov/opinions/pdf/361918_ord.pdf (addressing a change in a procedural rule that allowed the vacation of certain gross misdemeanors).

community custody supervision fees because she does not have the ability to pay. Because we are already remanding this matter for a full resentencing, we need not address these arguments. Larsen can raise, and the trial court can address, her same criminal conduct argument and reconsider whether to impose the community custody supervision fees during the resentencing. *State v. Toney*, 149 Wn. App. 787, 792-93, 205 P.3d 944 (2009).

## CONCLUSION

We reverse the conviction on count 4 and remand to the trial court to vacate that conviction and dismiss the charge with prejudice, to strike the 2012 unlawful possession of a controlled substance conviction from Larsen's offender score, and to resentence Larsen. At resentencing, Larsen can present her same criminal conduct argument and the trial court can reconsider whether to impose the community custody supervision fees. We otherwise affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

CRUSER, J.

We concur:

WORSWICK, J.

LEE, C.J.